## HAMBY & TOOMER *v.* GEORGIA IRON & COAL COMPANY

### *et al.,* and *vice versa.*

1. Where a lessee from the State, leasing convicts under the authority of the act approved December 21, 1897 (Acts 1897, p. 76), as amended by the act approved August 17, 1903 (Acts 1903, p. 66), subleases certain of the convicts to another by consent of the prison commission, the liability of the original lessee to the State, for hire of the convicts and their proper treatment and control, continues in force.

(*a*) If the contract between the lessee and his sublessee is silent upon the subject of the right of assignment thereof, and, for that reason, is not assignable, except with the assent of the lessee, yet if an assignment is made, and, before the surrender of the convicts, actual knowledge of the fact of assignment comes to the lessee, it is his duty to inquire as to the terms of the assignment; and if he fails to do so, he will be deemed to know all things to which inquiry would lead. If, without inquiry, he treats the lease as assigned, and participates in the arrangements to transfer the convicts to the place and service of the second sublessee, and assents thereto, he will afterwards be estopped from setting up that the assignment of his contract with the first sublessee was without his consent.

(*b*) Where the contract between the lessee and the sublessee (the subject of the assignment) provided for the subleasing of convicts for a term of two years, and contained the further stipulation, "and the privilege is hereby granted by the parties of the first part, and expressly reserved unto the parties of the second part, of renewing and extending this contract, for a period of three years from" the expiration of the two years, the stipulation just quoted is a valuable right under the contract, and a part thereof, and will pass by assignment of the contract, unless expressly reserved in the instrument of assignment.

(*c*) Such a stipulation, considered in connection with the whole contract of which it is a part in this case, is to be considered as a privilege of extension, in contradistinction from a privilege of renewal, and, accordingly, does not contemplate the execution of a new lease, and does not require other notice of the election to exercise the privilege than a continued use of the convicts under the contract after the expiration of the first term. The continued use of the convicts by virtue of the contract, after the expiration of the term, binds both parties to the contract for the full term specified in the privilege of extension.

(*d*) The application of the principle of estoppel, as made in subdivision *a*, supra, applies also to the assignment of the stipulation of the subleasing contract which relates to "the privilege of extending" the term for three years after the term of the lease has expired.

(*e*) While there is no contention that any of the defendants are insolvent, the pleadings and the evidence are such as to authorize a finding that the damages would be irreparable. There was no abuse of discretion in granting an interlocutory injunction.

2. Where a lessee of convicts from the State, under the acts of the legislature referred to in the first headnote, subleases the convicts with the

consent and approval of the prison commission, and the convicts are thereupon placed at work for the sublessee, the latter's right to the services of the convicts becomes authorized by law.

(a) After so acquiring the services of the convicts, the sublessee owes to the State certain duties of protection and control over the convicts; and the prison commission, in behalf of the State, is vested with authority to compel the faithful performance of these duties.

(b) As to matters which do not concern the protection or control of the convicts, but which relate exclusively to disputes between the lessee and sublessee over the right to the services of the convicts, arising out of private relations between the lessee and sublessee, the prison commission has no concern or jurisdiction.

(c) Under the record and evidence in this case, it appears that the prison commission was attempting to take the convicts from the service of the sublessee and restore them to the service of the lessee merely upon demand of the lessee, without the consent of the sublessee and not because of failure on the part of the sublessee to comply with any of its duties to the State with respect to the management or control of the convicts. This being true, the commission was attempting to deal with a matter over which it had no jurisdiction. Its order directing the removal was unauthorized, and the enforcement of the order should have been enjoined. The chancellor erred in ruling to the contrary.

Submitted July 18, 1906.—Decided March 1, 1907.

Injunction. Before Judge Pendleton. Fulton superior court. June 12, 1906.

The petition of the Georgia Iron & Coal Company against Hamby & Toomer, and Clement A. Evans, Joseph S. Turner, and Thomas Eason, the three last-named defendants composing the prison commission of the State of Georgia, alleged, in substance, as follows: On October 22, 1903, the State of Georgia, through the prison commission, entered into a contract with Hamby & Toomer, under the act of the General Assembly approved December 21, 1897, and the amendatory act approved August 17, 1903, by which contract the labor of 500 convicts was leased to Hamby & Toomer for a term of five years from April 1, 1904; and on the last-mentioned date Hamby & Toomer subleased fifty of these convicts to Dean Brothers, by whom the contract of sublease was assigned to the Pritchett Turpentine Company, which, on December 15, 1904, assigned it to the plaintiff. The sublease and these transfers were duly approved by the prison commission. One of the provisions of the sublease was: "The term of this contract is two years from and including April 1, 1904, and the privilege is granted by the parties of the first part, and is expressly reserved

unto the parties of the second part, of renewing and extending this contract for a period of three years from, after, and including April 1, 1906." The plaintiff renewed and extended the contract, in accordance with this provision, for three years from April 1, 1906, and, on April 2, 1906, so notified the prison commission in writing. The fifty convicts sublet to Dean Brothers were transported by the prison commission to the place designated by, and were worked for, the sublessees, and, on the assignment of the contract to the Pritchett Turpentine Company, were transported to the properties of that company and worked for it, and, on the assignment of the contract to the plaintiff, were transported to the plaintiff's properties and worked for the plaintiff's benefit, in accordance with the above-mentioned acts of the General Assembly; and the labor of these convicts has ever since been so employed on the plaintiff's properties; all of which was known to and acquiesced in by Hamby & Toomer. On April 10, 1906, Hamby & Toomer applied to the prison commission for an order directing the State warden to remove these subleased convicts from the plaintiff's properties, where they were working, in Dade county, to Ware county, to be worked for the benefit of Hamby & Toomer; whereupon the plaintiff filed its objection thereto, averring that the prison commission did not have the right to remove the convicts, under the facts which have been stated. The defendants Turner, Evans, and Eason, however, purporting to act in their official capacity as the prison commission, went through the form of granting the order applied for, basing it on a written opinion of the attorney-general of the State. The order was granted not on the ground that the plaintiff was not complying with the law, but solely on the ground that, notwithstanding the prison commission had approved the sublease and the transfers, this did not create a contractual relation between the State and the sublessee, and that, as Hamby & Toomer were the persons with whom the State contracted, the prison commission was bound to recognize their right to designate the place at which the convicts should labor, without regard to whether the rights of a third person had intervened under a contract of sublease. There is no legal authority for removing these convicts on the ground on which the defendants are proposing to remove them. The convicts are employed in the operation of the plaintiff's iron furnace in Dade county, and of its iron mines in Bartow county, in which

places the procurement of free labor is practically impossible; and if the convicts are removed, it will cause the shutting down of said operation; the result of which will be to injure these properties and destroy the plaintiff's business for some time to come; and the damage which would result to the plaintiff is incapable of accurate calculation or estimation. The plaintiff is entitled to the labor of these convicts until the expiration of the lease. The State warden will remove them, unless the defendants are enjoined; and the plaintiff has no adequate remedy at law. It is prayed that an injunction be granted to prevent removal or interference with the convicts.

Hamby & Toomer demurred on the following grounds: There is no equity in the petition, and no reason is shown why the plaintiff has not an adequate remedy in an action for damages. The State is really, though not nominally, a party to the petition, (a) because the petition is an effort to enforce specific performance of an alleged contract of the State, indirectly, by injunction to prevent acts which would be a mere breach of the contract on the part of the State; (b) because the prison commission, in passing the order complained of, and in deciding whether any duty existed on its part to the plaintiff, was exercising discretionary powers with which the commission was clothed as executive officers of the State in the management and control of convicts; and (c) because the commissioners were under no duty to the plaintiff by mandate of the State to leave the convicts with the plaintiff or to recognize the alleged contractual rights. The plaintiff has no rights against the State, contractual or otherwise. The petition is an effort to create a contract between the plaintiff and the State by estoppel; which can not be done, for the State is sovereign, and can not be estopped by the acts of its officers or agents. The plaintiff has no right to or interest in the labor of the convicts, or to interfere with the action of the defendants, (a) because the sublease to Dean Brothers involved a personal relationship, and was not assignable; (b) because the sublease imposed certain liabilities on Dean Brothers, and therefore was not assignable; (c) because the alleged assignment from the Pritchett Company was a second sublease, and was unauthorized by law, and void; (d) because the sublease expired March 31, 1906, and the option to renew or extend it was not exercised by Dean Brothers during its term; and (e) because

the plaintiff had no right to exercise the option, or renew or extend the lease. Certain parts of the petition were demurred to specially, as stating conclusions, as not showing in what manner the lease was renewed or extended, and as not showing how the plaintiff would be irreparably damaged, etc. In their answer, Hamby & Toomer denied that they had acquiesced in the transfer of the contract in question to the plaintiff, and denied that there was an extension or renewal of the lease. The defendants composing the prison commission answered, contending that, under the law, it was the duty of the commission to deliver the convicts to the original lessees as demanded, without undertaking to decide any matter of dispute between those lessees and their sublessees, since the State contracted alone with the original lessees, and they alone had given bond for payment of the hire; that the law authorizing the commission to approve of the subletting of convicts is merely permissive, and in the interest alone of the lessee, and such approval does not constitute a new contract on the part of the State with the sublessee; and that if the plaintiff had any right or remedy, it was against Hamby & Toomer alone.

The court, after hearing evidence, refused the prayer for injunction against the defendants composing the prison commission, but granted an injunction against Hamby & Toomer as prayed for; to which they excepted. The plaintiff, by a cross-bill of exceptions, assigned as error the refusal of an injunction against Turner, Evans, and Eason.

*Candlers, Thomson & Hirsch,* and *R. L. D. McAllister,* for Hamby & Toomer. *John C. Hart, attorney-general,* for Turner, Evans, and Eason. *Anderson & Anderson,* contra.

ATKINSON, J. 1. The act of 1897 creating the prison commission authorized the hirer of convicts to sublet the convicts by and with the consent of the commission, provided there was no additional expense to the State. Acts of 1897, p. 76. This act was amended by the act of 1903 (Acts of 1903, p. 66), which provides: "No lessee of convicts as herein provided for shall sublease any of said convicts to any person other than such as shall be approved by said commission, and only upon such terms as said commission shall prescribe." This provision contains a negative pregnant, and really declares that a sublease is authorized, provided the terms and the party with whom it is made are satisfactory to the prison

commission. Hence when a sublease has been approved by the prison commission, the sublessee is lawfully in control of the convicts. It does not interfere with the contract between the State and the original lessee. He is discharged from no obligation to the State either as to the payment of the hire or the duty to see that the convicts are dealt with in accordance with the law. The effect of the sublease is merely to render lawful the possession of some other person than the lessee himself, the lessee remaining liable in all particulars as if no sublease had been made, the sublessee, however, becoming liable for any misconduct on his part in reference to the manner in which the convicts are dealt with. The State might annul the sublease for misconduct on the part of the sublessee, and require the lessee to take charge of and control the convicts, provided such misconduct was not chargeable to the lessee himself. If the lessee and sublessee were both guilty of acts which would cause a forfeiture of the lease, the State could revoke the lease and take the convicts from the possession of both the lessee and the sublessee. So long as the sublessee discharges the obligations which he is under to the lessee, as well as those which he is under to the State, growing out of the fact that the convicts are in his possession, he has a legal right to the labor of the convicts in his possession, and this right can not be arbitrarily or capriciously taken away, either by the authority of the State or the lessee during the term of his sublease.

In this case it appears that a lease was made to Hamby & Toomer of 500 felony convicts. With the consent and approval of the prison commission a sublease of 50 of such convicts was made by Hamby & Toomer to Dean Brothers. Under this sublease Dean Brothers became chargeable with all of the duties arising under the contract made between them and Hamby & Toomer, and also chargeable with every duty in relation to the management of the convicts which Hamby & Toomer owed to the State. Their right to the control of the convicts was complete. Their right to retain them depended upon the performance of their obligations to Hamby & Toomer and the State. This contract of sublease was transferred to the Pritchett Turpentine Company. It does not appear from the record that the transfer was ever approved by the prison commission. The Pritchett Turpentine Company transferred its interest in the contract to the Georgia Iron & Coal Com-

pany. This transfer was approved by the prison commission. There is nothing in the act prohibiting transfers of a sublease, but even if a transfer of a sublease might be irregular, the effect of an approval by the prison commission of a sublease which had been made with the consent of the original lessee is merely the revocation of the former sublease and the substitution of a new sublessee who occupies the same relation to the lessee consenting to such an arrangement, and to the State, as the original lessee. That is, it was competent for Hamby & Toomer and Dean Brothers or the Pritchett Turpentine Company to cancel the lease and to make a new sublease with the Georgia Iron & Coal Company upon the same terms as were contained in the sublease with Dean Brothers and the Pritchett Turpentine Company, or upon any other terms; and the transaction as it appears is in legal effect nothing more nor less than this: the prison commission, by approving the transfer, authorizes the Georgia Iron & Coal Company to assume the relation of sublessee under Hamby & Toomer, and, so far as the State is concerned and Hamby & Toomer are concerned, the terms and stipulations of the contract made with Dean Brothers become the terms and stipulations of the contract between Hamby & Toomer and the Georgia Iron & Coal Company. The record does not disclose any written consent by Hamby & Toomer to the transfer to the Georgia Iron & Coal Company, but the evidence discloses that it was done with their knowledge and without their disapprobation, and that they participated in the negotiations and the transfer of the convicts to the place where the Georgia Iron & Coal Company placed them at work. Under the record the Georgia Iron & Coal Company occupied unquestionably the relation of sublessee, both as to Hamby & Toomer and the State, for the period of two years specified in the contract between Dean Brothers and Hamby & Toomer.

The duties imposed upon a lessee of convicts are important and onerous, as well as delicate, in their nature. In these duties are involved the protection of the lives and the health of the convicts. The State looks to the lessee for a faithful discharge of these duties. The contract contains personal features, and therefore a sublessee would have no right to substitute in his place a person who was not satisfactory to the lessee; for the lessee is always responsible to the State for a proper discharge of these duties, no

matter who may be the person actually in charge of the convicts. Hence, because of these reciprocal obligations, Dean Brothers would not have the right to transfer their lease to any one without the consent of Hamby & Toomer, there being no provision in the contract by Hamby & Toomer with Dean Brothers for assignment. Nor would the Pritchett Turpentine Company have such right. But although Hamby & Toomer may not in the first instance have known of the contracts to assign between Dean Brothers and the Pritchett Turpentine Company, and between the Pritchett Turpentine Company and the Georgia Iron & Coal Company, yet the record discloses that before the latter company took possession of the convicts, Hamby & Toomer did know of the assignment;— the assignment of the particular lease which they in the first instance had executed to Dean Brothers,—not a mere independent subletting of the convicts for some particular time or service, but the actual assignment of the lease. The evidence is undisputed that Tierce, the agent of the Georgia Iron & Coal Company, went to the camps at Valdosta to inspect the convicts about to be turned over to his principal, and met Mr. Hamby, representing Hamby & Toomer; and, in the conference which ensued, Mr. Hamby "insisted that the Georgia Iron & Coal Company, as *assignee of the sublease contract,* under which these men were held first by *Dean Brothers* and then by the *Pritchett Turpentine Company,* was bound to accept its share of the crippled." Here was a direct admission that the lease had been assigned to the Georgia Iron & Coal Company and that Hamby knew of the assignment. Now, with knowledge that the lease itself had been assigned, what acts of acquiescence and of ratification, if any, did Hamby & Toomer do?

It appears from the record, first, that before the delivery of the convicts, Mr. Hamby, giving the matter his personal attention, met Tierce, the agent of the Georgia Iron & Coal Company, and disputed with him as to whether or not the sublessees under the Dean Brothers lease, the subject of assignment, were bound to take any crippled convicts. It was contended by Mr. Hamby that under that lease the Georgia Iron & Coal Company was "bound to accept its share of the crippled." After this difference was settled, Tierce went back and, with Mr. Hamby, selected the convicts which were to be turned over. After the selection, Mr. Hamby asked Tierce how he liked them. After the convicts were

delivered to the Georgia Iron & Coal Company Mr. Hamby wrote Tierce a letter stating that he, Tierce, would be furnished by Hamby's agent with necessary blanks for reports and stamped envelopes, the letter also containing this clause: "The men you receive from Rome will apply on our contract with Mr. Hurt [Mr. Hurt was the president of the Georgia Iron & Coal Company] at that point, which will make your number 26 under that contract. The others you have received will apply on the contract at Rising Fawn, which is the sub-contract from us to Pritchett Turpentine Company." In accordance with the letter just recited, blanks for reports were sent to the Georgia Iron & Coal Company by the agent of Hamby & Toomer, with request that they be used "in reporting to Hamby & Toomer all changes that took place among the men that they had under their control leased from Hamby & Toomer." From and after receiving the convicts in December, 1904, they were worked by the Georgia Iron & Coal Company in accordance with the terms and stipulations contained in the sub-lease from Hamby & Toomer to Dean Brothers. It will therefore be seen that Hamby & Toomer not only acknowledged that the contract had been assigned, but dealt with the last assignee, the Georgia Iron & Coal Company, as if that company were Dean Brothers, the original sublessee, and thereafter recognized the right of the Georgia Iron & Coal Company to the services of the convicts. In the letter which Hamby & Toomer wrote in February, 1905, they recognized the assignment of the contract to the Georgia Iron & Coal Company, and showed a knowledge of the contents of the contract of assignment by the use of these words: "The others you have received will apply on the contract at Rising Fawn, which is the sub-contract from us to the Pritchett Turpentine Company." In the contract of assignment to the Georgia Iron & Coal Company, Rising Fawn was the place specified for delivery of the convicts to that company. Proof of the foregoing was sufficient to enable the court to find that Hamby & Toomer had knowledge of the assignment to the Georgia Iron & Coal Company of the lease which they had originally executed to Dean Brothers, and that with such knowledge they acquiesced in the taking of the convicts by the Georgia Iron & Coal Company under such assignment, and that their conduct amounted to assent to the same. It was the equivalent of a ratification of the act of assignment. In such case

it will be deemed that Hamby & Toomer assented to the assignment. Not the assignment of a part, but whatever purported to be assigned. The record indicates strongly that Hamby & Toomer actually knew all the contents of the contract of assignment, but even if they did not have actual knowledge thereof, the matters hereinbefore referred to were sufficient to put them upon inquiry and charge them with knowledge if they did not pursue the inquiry. Having, under such conditions, assented to the assignment, clearly an estoppel arose against Hamby & Toomer from afterwards claiming that the assignment was without their assent, and, for that reason, invalid. There is a complete estoppel against the denial of the fact of assignment of anything which in law was assignable.

The contract between Hamby & Toomer and Dean Brothers contained this stipulation: "The term of this contract is two years from and including April 1, 1904, and the privilege is hereby granted by the parties of the first part and expressly reserved unto the parties of the second part of renewing and extending this contract for a period of three years from, after, and including the 1st day of April, 1906." A contract for the hiring of personal property, of course, does not raise technically the relation of landlord and tenant between the parties. But in a contract for the hiring of personal property, the rules governing the relation of landlord and tenant, which is really only the hiring of land to tenants, might often by analogy be well applied. A convict during his term of service has no right of volition. He is compelled to do service against his will. Of course, a convict is not property. He is a human being, and the State owes to him the same duty that it would owe to any other human being under the same unfortunate circumstances by which he is surrounded. His labor, however, during his term of service, is a property right which may be made the basis of a valid contract. *Georgia Penitentiary* v. *Nelms*, 71 *Ga.* 355. Applying by analogy the rule which would be applicable if we were dealing with a case of landlord and tenant, the stipulation above quoted accords a privilege which is very often found in leases of land. Having in a previous portion of this opinion shown that either consent, or estoppel from denying consent, to an assignment of the contract under consideration, which contained reciprocal obligations involving personal trust, rendered the contract assignable, and having shown that

51

the facts were such as to authorize the judge in finding that there was an estoppel, we may deal with the subject now under consideration as if the stipulation for extension of time were really a contract for the lease of land where no obligations in the nature of a personal trust are involved.

It becomes necessary to determine. the question of whether this stipulation is such as to provide for a renewal of the lease, or a mere extension of the time first stipulated in the lease. The consequences which would flow from the construction that it provides for a renewal would be different from those which would flow from construing it as providing for a mere extension. If the stipulation contemplates a new contract at the expiration of the two years, then it would be a renewal, and. the execution of a new lease would be indispensable. In this contingency it would be incumbent upon the lessee to notify the lessor, before the term expired, that he had exercised his option to take a new lease. On the other hand, if the stipulation is to be construed as merely an extension of the time under the old lease, and no new agreement was contemplated, then, no notice being expressly provided for in the contract, if the lessee merely remained in possession by virtue of the contract after the expiration of the two years, this would bind both the lessee and the lessor to an extension for the additional time stipulated in the lease, and no further notice would be required. Jones on Landlord & Tenant, §337, et seq.; 1 Tayl. Landlord & Tenant (9th ed.), §332; 2 Wood on Landlord & Tenant (2d ed.), 947. In the case of Slater v. Kimbro, 91 Ga. 217, the contract was for the possession of the premises for one year, "with privilege of two years longer at same agreed rate." It was held that the tenant's merely continuing· in possession one day after the year had expired bound both· the landlord and the tenant for the time extended, and therefore a warrant to dispossess, sued out maliciously on the first day after the expiration of the year, was sued out without probable cause, and the landlord would be liable in damages to the tenant resulting from such conduct on his part. See also 7 Words & Phrases, 6086, and Insurance Bldg. Co. v. National Bank, 71 Mo. 58-60. The stipulation in question uses both the words renew and .extend, but when it·is construed as a whole, it is manifest that it was intended merely to extend the time upon all the terms and conditions stated in the lease. While

the words renew and extend do not always mean the same thing, still in interpreting a stipulation of the character above referred to, the context must be considered, and the intent of the parties must be arrived at, and this may, under certain circumstances, require that these words shall be given a similar meaning. Jones on Landlord & Tenant, §338. When the provision of the lease is thus construed, no notice was necessary before the expiration of the two years; and the evidence showing that the lessee had continued to retain the convicts in its custody after the expiration of the two years, which would be the equivalent of remaining in possession of land, the extension provided for in the contract became effective, and was binding both upon the lessor and lessee.

But it may be said that Hamby & Toomer have never agreed to an extension, and, as has been said, there is nothing in the record to show any express agreement upon their part, either to the transfer of the lease or the extension. The privilege of extension was a part of the original contract, and a valuable part, which they expressly granted in the first instance to Dean Brothers. When they acquiesced in the transfer of the contract as the evidence shows that they did, their acquiescence was not limited to any particular part, and their assent thus given to the transfer extended to every stipulation in the contract, and, so far as they were concerned, the Georgia Iron & Coal Company stood in the shoes of Dean Brothers. The rule at common law was that a tenant had a right to sublet, unless the lease restricted him from so doing. The rule in Georgia is exactly the opposite: the tenant has no right to sublet, unless the landlord consents. If this rule be applied, the assignment would be effective in this case, for the reason that the consent of Hamby & Toomer to the assignment is to be implied from their conduct. They can not take the benefit of this assignment during the two years and interpose an objection to the assignment so far as it relates merely to the stipulation as to the extension. What has been said will distinguish this case from that of Arkansas Smelting Co. v. Belden Co., 127 U. S. 379. In that case there was no consent by the party whose consent was required to an assignment. The decision recognizes that if there had been such consent, the consequences would have been otherwise. While there was no allegation that Hamby & Toomer were insolvent, the allegations of the petition and the evidence before the judge were

sufficient to show that the damages resulting to the Georgia Iron & Coal Company from loss of convicts would have been irreparable. Hence it follows that there was no abuse of discretion in granting an interlocutory injunction restraining Hamby & Toomer from interfering with the Georgia Iron & Coal Company in their possession of the convicts.

2. The cross-bill of exceptions raises the point that the court erred in not enjoining the prison commissioners from carrying into execution their order based upon the petition of Hamby & Toomer. The point is made that this is really a suit against the State, and therefore an injunction was properly refused. If the order of the prison commission was within the legitimate scope of the powers of that body and they were exercising merely their discretion, the courts would not interfere with them in the discharge of their duties as public officers and the representatives of the State. *Southern Mining Co.* v. *Lowe,* 105 *Ga.* 352; *Hudspeth* v. *Hall,* 113 *Ga.* 4, and cases cited. The effect of the order, however, was to vacate the sublease which had been approved by them. The prison commission has the power to vacate either a lease or a sublease, for cause, but can not, merely at the request of the original lessee, destroy the rights of the sublessees in the property represented by the labor of the convicts in their possession. The facts as they appear in the record show that the commission was not acting at the instance of the State. The order was, therefore, beyond the power of the commission. The prison commissioners acted under the theory that they were to deal only with the lessee and had no concern with the controversies between a lessee and a sublessee. While their dealing is with the lessee, and they look to the lessee for the hire, and they look to the lessee for the discharge of the duty which the law imposes upon all concerned in the work of convicts, still, as has been shown in a previous portion of this opinion, when the lessee has done nothing to work a forfeiture of his lease, and the sublessee has done nothing to work a forfeiture of his sublease, the State receiving its hire and the convicts receiving the treatment which the law requires should be granted to them by those in whose charge they are, the prison commission has no right, merely at the instance of a lessee, to take from the possession of a sublessee convicts which are lawfully in his possession and to which he is entitled as against the rights of the lessee.

The order of the prison commission was therefore unauthorized. No right of the State had been violated. No duty to the convicts had been broken. Nothing had transpired which gave the commission jurisdiction of the matter. An injunction should have been granted restraining the further execution of the order. The prison commissioners were confronted with a condition which was unusual and without precedent; and while we have not been able to concur in the result reached by them, there is no criticism of them.

*Judgment, on main bill of exceptions, affirmed; on cross-bill, reversed. All the Justices concur, except Fish, C. J., absent.*