41182. SMITH v. HUCKABEE PROPERTIES, INC.

452

DECIDED MARCH 19, 1965—REHEARING DENIED MARCH 31, 1965.

*Adams, O'Neal, Steele, Thornton & Hemingway, Charles F. Adams, H. T. O'Neal, Jr.,* for plaintiff in error.

*Jones, Sparks, Benton & Cork, Frank C. Jones,* contra.

RUSSELL, Judge. ■ The lease contained a special typewritten stipulation that lessee has "the right, power and option to renew this lease under the same terms and conditions and at the same rental for an additional period of five years immediately following the expiration of the original term of said lease, provided that written notice is given of the intention to exercise said option of renewal prior to the expiration of the initial term." No such notice was given unless the check in the amount of $200 forwarded on March 6 constituted a notice of renewal. It contained no notation to this effect. On its face, particularly in view of prior like transactions between the parties, it appeared

to be a check for one month's rent. Options, to be effective must be exercised according to their language and must be in such terms "that the lessee cannot escape liability should he subsequently decide not to keep the premises." *Citizens Oil Co. v. Head*, 201 Ga. 542 (2) (40 SE2d 559); 51 ALR2d, Anno., p. 1408, 1411. If the plaintiff was justified in its assumption that the check was for a period of February 15-March 14, the check was obviously merely a check for rent due. If the defendant's contention is correct that because he entered into the lease two months after its recited commencement date he was entitled to an equivalent period at the end of the lease, then the check was for rent due and the term of the tenancy had not yet expired, so the check could not be notice of renewal any more than all the previous monthly rent checks. If the plaintiff was paying for a period of March 1-April 1, but the term ended in fact on March 14, approximately half the amount of the check was payable as rent with an excess payment for a fortnight period. As to such a payment, paragraph 22 of the lease agreement provided: "If Lessee remains in possession after expiration of the term hereof, with Lessor's acquiescence and without any distinct agreement of parties, Lessee shall be a tenant at will; and there shall be no renewal of this lease by operation of law." It therefore appears clear from the unequivocal language of the contract that regardless of when the termination date actually was, there would be no renewal of the lease without written notice *of the intention to exercise the option*, and that payment of advance rental after the termination date of the lease without such explicit notice, if accepted, would merely have the effect of converting the tenancy into a tenancy at will. It follows that there was no exercise of the five year renewal option by the tenant at a time when he might have done so.

■ The defendant, however, contends that even so his notice of intention to renew did not come too late because of his oral agreement with the plaintiff's assignor, Oetter, that the two-month period at the beginning of the lease which he lost by reason of the inability to complete the repairs on the premises by the original inception date of March 15, 1959, should be tacked on at the end, making the actual termination period

May 15, 1964. Oetter was the original owner and lessor of the land, and neither his original assignee, Huckabee Auto Co., nor the plaintiff and subsequent assignee, Huckabee Properties, Inc., received any notice of this arrangement. The lease expired according to its terms on March 14, 1964. It also contained a provision making time of the essence of the contract and expressly stated that oral agreements not embodied therein should be of no force and effect. This lease, being for a period of more than a year, was one which the law requires to be in writing, and "a contract which must, under the statute of frauds, be in writing, and which, accordingly, is put in writing and duly executed, can not be subsequently modified by a parol agreement." *Gulf Oil Corp. v. Willcoxon*, 211 Ga. 462, 465 (86 SE2d 507) and see *Hawkins v. Studdard*, 132 Ga. 265 (6) (63 SE 852, 131 ASR 190) ; *Augusta Southern R. Co. v. Smith & Kilby Co.*, 106 Ga. 864 (33 SE 28) ; *Mitchell v. Universal Life Ins. Co.*, 54 Ga. 289. It was pointed out on a later appearance of the same case that a party to a contract (in this case, a sale of land) to whom money is due thereunder may, while he can- not modify the contract by a subsequent parol agreement, be estopped to rely on its terms because his conduct has misled the other contracting party to his injury. "A new contract fixing a new date for performance and a waiver of performance at the time fixed in the original contract, and an estoppel which prevents the setting up of non-compliance within the time fixed, are not the same thing. In the case of a new contract or the modification of an existing one, both parties are bound by the terms of the new contract, and have a right to insist on the new date fixed therein for performance. In the case of a waiver the original contract remains; the purchase-money is due; the seller merely waives strict enforcement as to time, so as to prevent him from declaring a forfeiture on account of a past failure." *Studdard v. Hawkins*, 139 Ga. 743, 747 (78 SE 116). Such an estoppel does not extend to a grantee who purchases in good faith for a valuable consideration without any notice of the grounds of estoppel. *Davis v. Auerbach*, 78 Ga. App. 575, 580 (51 SE2d 527) ; *Strain v. Monk*, 212 Ga. 194 (2) (91 SE2d 505). The agreement of the original parties to postpone the

commencement date of the lease due to the lessor's inability to complete structural improvements contemplated by the lease agreement was of course fully executed, and was not at the time it was entered into such an agreement as would be required to be in writing in the first instance. *Covington v. Brewer*, 101 Ga. App. 724 (115 SE2d 368) cited by the defendant, is an example of an oral executed agreement to postpone the commencement date of a lease contract. This case, however, deals with an oral executory agreement to extend the termination date of the lease, which would carry with it an extension in parol of the time the defendant might exercise his option. It was held in *Gulf Oil Corp. v. Willcoxon*, 211 Ga. 462, 465, supra: "In so far as the plaintiff may rely upon an extension in parol by the defendant of the time in which the plaintiff might exercise its option, such extension could be made only in writing." Whatever effect the oral agreement might have had between the original parties if based on grounds of waiver or estoppel, the estoppel will not extend to one who purchases in good faith and without notice of the grounds of estoppel. *Davis v. Auerbach*, 78 Ga. App. 575, supra. The tenant was therefore not entitled to resist the plaintiff's dispossessory action because of an oral extension of time granted by the plaintiff's vendor as to a subject matter which was itself within the statute of frauds. A vendee of property subject to a lease takes subject to the tenant's rights under the lease, but he is not bound by secret agreements not included in it. *Richardson v. Lampley*, 107 Ga. App. 395, 396 (130 SE2d 268); *City of Savannah v. Standard Fuel Supply Co.*, 151 Ga. 145 (2) (106 SE 178, 13 ALR 1451).

■ The motion for summary judgment was heard on affidavits and exhibits from which it appears that the first rent check was dated May 1, 1959, and that payments had been made during each calendar month thereafter. The last check was dated March 6, 1964, and that check was received by the plaintiff but was neither cashed nor returned. The affidavit of Oetter, the first lessor states that "the rent on said premises did not commence until May 15, 1959, and the check dated May 1, 1959 . . . was for payment of advance rent covering the period from May 15, 1959 through June 14, 1959. Further, every pay-

ment shown on said summary of rent checks as being made to George C. Oetter was in fact an advance payment of rent. Deponent says that the rent owed under said lease by E. Raymond Smith was always paid in advance during the entire time that deponent owned said property." Smith deposed to the same effect and there was no conflicting evidence on the point. This establishes that the March 6, 1964, check which the plaintiff retained was actually for rent from March 15 through April 14, 1964, the month following the expiration of the lease. The landlord raised no question about the pay period until March 16, ten days later and a day after the lease had expired, when it for the first time notified Smith to surrender possession, queried the defendant as to the time covered by the check, stated it was assuming that the period involved was from February 15 to March 14, and added that "under the terms of the lease agreement if you continue in possession after March 14 your possession is that of tenant at will." The retention of the check together with any failure to question it during the ten-day period prior to the termination date of the lease and this statement in the plaintiff's letter brought the tenant within the lease provision that if he remained in possession after the expiration of the term "without any distinct agreement of the parties, lessee shall be a tenant at will." As to a tenancy at will he would be entitled to two months' notice prior to termination. *Code Ann.* § 61-105. The dispossessory warrant was filed on April 16, 1964, and was premature. The landlord was chargeable with notice of the term to which proffered rent was applicable, and while it is true that a check is not payment until itself paid, his retention together with this positive statement in the letter that if the lessee held over he became a tenant at will, establish this relationship as of March 15. Prior to March 15, the landlord had no way of knowing whether the tenant would remain as a tenant at will or as a tenant for years, because the tenant had through March 14 in which to exercise its option to renew the lease if it wished to do so.

It was error for the trial court to grant the motion for summary judgment.

*Judgment reversed. Felton, C. J., and Jordan, J., concur.*