## 48910. PITMAN v. GRIFFETH.

HALL, Presiding Judge.

This appeal is brought with a certificate from the trial court's judgments on cross motions for summary judgment entered in appellant's dispossessory action, and presents issues concerning the sufficiency of an alleged oral lease-termination notice and the proper construction of a renewal provision.

Plaintiff-appellant, as lessor, entered into a lease of a store building for $130 per month to one C. W. Griffeth, the lease beginning April 1, 1968 for a five-year term. In October of 1972 the tenant died, leaving certain heirs including defendant-appellee, who has now qualified as his executor. Hereinafter, the parties will be referred to as plaintiff and defendant.

Plaintiff testified in his deposition that he believed that the death of the tenant automatically terminated the lease. Actually, the applicable lease provision read as follows: ". . . in the event of death . . . of lessee, lessor may, if he so desires, immediately terminate this contract and resume possession of the premises." It is defendant's position here that he was unaware that the property had been held under a lease, and was under the impression that a month-to-month tenancy had existed between plaintiff and his father. Two days following tenant's death, defendant approached plaintiff to inquire about plaintiff's future intentions concerning the building, in which a beer and wine store had been operated for some years. Plaintiff testified that his response was "As far as I know right now, the building will stand there until further notice that I would not sign a lease with nobody as of now," or perhaps "As far as I know, till further proceedings and further notice that I would sign no lease with no one." This language is quoted from plaintiff's

deposition because it constitutes the full extent of what he argues was a notice of termination which should be deemed to satisfy the applicable lease provision. There was no further conversation and plaintiff did not mention the existence of a lease with C. W. Griffeth. Defendant, however, testified that in response to his own statement that the family wished to continue the business at the same location, plaintiff indicated agreement, though he did decline to sign a lease. Defendant recalls no mention of "further notice." Subsequently, plaintiff accepted defendant's checks of $140 in payment of the monthly charge for the premises.

On about February 1, 1973, apparently taking the position that defendant was a tenant at will, plaintiff gave him a written 60-day notice to vacate by April 2, 1973, stating that "In the event the premises continue to be occupied after that date, the monthly rental rate for April, 1973 and thereafter will be $400.

The record presently before us indicates that during March defendant prepared to move, but he testified that on March 27, 1973, he found in his father's papers the written lease agreement including a renewal option which was typed as follows in the blank space on the lease form for description of premises: "Store Bulding [sic]. 2019 so. Milladge [sic]. For a Term of 5 Years, Privilege to Renew This Leas [sic] (5 years)." The printed portion of the lease contained this sentence: "It is expressly agreed that there shall be no extension or renewal of this lease or continued occupancy of said premises beyond the term of this lease unless there be an agreement in writing to that effect signed by the lessor." Defendant, purporting to act as executor of his father's estate, then delivered to plaintiff a notice of the exercise of the claimed lease agreement renewal option on March 29, 1973, two days before the initial term of the lease expired. He also tendered rent for the first portion of the renewal period, but it was returned by plaintiff who declined to accept it. Plaintiff attempted to padlock the premises, and was enjoined. The grant of the injunction was affirmed by the Georgia Supreme Court in *Pitman v. Griffeth,* 231 Ga. 136 (200 SE2d 760).

On April 12, 1973, defendant qualified as executor

under the last will and testament of Charles W. Griffeth, Sr., and on that date plaintiff served him with a demand for possession of the premises. He refused, and on May 7, 1973, plaintiff began dispossessory proceedings.

On September 5, 1973, the trial court rendered its opinion and judgment on the parties' cross motions for summary judgment, denying plaintiff's motion, granting defendant's motion and dismissing plaintiff's dispossessory action, finding among other things that plaintiff had not exercised his right to terminate the lease and assume possession after tenant's death; that the lease properly construed provided for an *extension* and required no new agreement between the parties until the expiration of ten years, but that the renewal option at the end of five years might be, and was, exercised by defendant merely by remaining in possession and tendering rent.

Our first concern must be with the sufficiency of the alleged notice of termination given by plaintiff to defendant. Neither litigant has cited authority to the court, and our research has disclosed only four Georgia cases on this point: *Woodall v. Pharr,* 119 Ga. App. 692 (168 SE2d 645) affirmed 226 Ga. 1 (172 SE2d 404); *Clarke v. Robinson,* 118 Ga. App. 525 (164 SE2d 260); *Shiflett v. Anchor Rome Mills, Inc.,* 78 Ga. App. 428 (50 SE2d 853); and *Moon v. Daniel,* 64 Ga. App. 363 (13 SE2d 187). The first three cited cases are uniform in their requirement that to be sufficient such a notice must expressly declare that the lease is terminated. Such a declaration is not claimed here to have been made. Consequently, if those cases were clearly applicable, they would be determinative of the question against plaintiff. However, we note that in each of those cases the written lease provided that the landlord might terminate *by giving notice.* In the case at bar, no *method* is outlined by which the landlord must terminate; he may unilaterally "terminate . . . and resume possession." There is no contract requirement of "notice." For this reason, though the question is by no means free from difficulty, we conclude that the rule applicable here is the more general rule that "A landlord's notice to quit or of termination of the tenancy need not be in any particular form or

employ any particular words, but it must be so certain that the tenant cannot reasonably misunderstand it." 51C CJS 287, Landlord & Tenant § 89 (5) a (1968). Accord, 19 Encyc. of Ga. L. 247, Landlord & Tenant, § 56 (1971). This was the rule applied in *Moon v. Daniel,* supra, where a notice of termination was also contractually required and yet the court allowed as sufficient a notice that did not declare the lease terminated and did not in so many words demand possession of the premises, but merely said, "In accordance with the terms of our contract, this is to give you thirty days notice that I wish to rent my lot . . . to another party." For this reason, we find that plaintiff is entitled to a ruling that he terminated the lease, *if* what he said to defendant was such that defendant could not reasonably misunderstand plaintiff's statement; that is, if the statement was unequivocal that plaintiff planned to exert such control over the premises from that time forth as to amount to "possession" in himself inconsistent with another's claim of right to the premises as anything other than a tenant at will. Code Ann. § 61-104. This "possession," of course, in the legal sense does not have to mean plaintiff's *occupancy* of the premises, and it is not inconsistent with his allowing defendant to remain on the premises "until further notice."

On defendant's motion for summary judgment plaintiff is entitled to have all the evidence, including his own testimony, construed most strongly against defendant. *Burnette Ford, Inc. v. Hayes,* 227 Ga. 551 (181 SE2d 866). Of course, there is a conflict in the testimony creating an issue of fact for the jury as to what was said in the conversation in issue between plaintiff and defendant. But after the jury decides what was said, they must decide the further question of the unequivocal nature of the communication. Accordingly, significant fact issues remaining to be determined, the trial court erred in granting summary judgment for defendant.

We must now consider whether plaintiff is entitled to summary judgment on the lease-renewal point; that is, even if he did not terminate by oral notice, did defendant's lawful tenancy expire with the termination of the original five-year term of the lease, or could he

unilaterally extend for five years as he attempted to do? The trial court held that the renewal provision was properly construed as an "extension," which was accomplished by the tenant's holding over and tendering rent for the new term.

The lease term contained a privilege to "renew." Usually, "An option to renew may indicate that the parties intended a new lease, whereas an extension is merely a continuation under the original term." 19 Encyc. of Ga. L. 197, Landlord & Tenant, § 35 (1971). But, particularly where a lease is drafted by laymen, "In the final analysis, whether a contractual provision involves a renewal or an extension is determined by the intention of the parties as disclosed by the whole instrument and the parties' interpretation and practical construction thereof; and the use of the word 'renewal' or 'extension' is not conclusive." 51C CJS 163, 165, Landlord & Tenant, § 54 (b) (1968). "The cardinal rule of construction is to ascertain the intention of the parties." Code § 20-702.

It is basically plaintiff's position that the contract called for a renewal; that it therefore contemplated a new lease under *Candler v. Smyth,* 168 Ga. 276 (147 SE 552); that there was no new lease; and therefore defendant was a tenant at will who was subject to being dispossessed and who had only a right to seek such remedy as the law allowed him for plaintiff's having refused to execute the renewal contract with him. This position, we conclude, is erroneous because if the tenant here wished to renew his lease, there was to be no new term or condition which required a new contract. The renewal of "this lease" with no provision for changed terms makes plain that the terms and conditions of the original lease are to govern during the renewal period and there is nothing which has been left for renegotiation at renewal time. It was the fact that all the "terms and conditions" of the *Candler v. Smyth* lease were to be redefined at renewal time that compelled the conclusion there that a new lease was required.

Plaintiff also relies on *Walker v. Brooks Simmons Co. Inc.,* 44 Ga. App. 470 (161 SE 659), in which it was held that the "privilege of renewal . . . at the same rental" contemplated a new contract and rendered a new lease

indispensable, in the absence of which the lessee became a tenant at will. However, in *Hicks v. Gentry*, 104 Ga. App. 3, 6 (120 SE2d 915) this court impliedly disapproved this ruling in *Walker* by giving this narrow reading to the case despite its broader language: "The *Walker* case differs from this case, let it be noted, in that, in that case there was no notice and it was simply held that in the absence of notice to exercise a renewal option the mere holding over and paying rent did not effect a contract for a renewal term." Thus, fully cognizant of *Walker,* this court in *Hicks* nonetheless ruled that an option to renew on the same terms did not require the execution of a new lease. Accord, *Save-Way Oil Co. v. Thomas,* 100 Ga. App. 181 (110 SE2d 681).

We feel that the present question is answered by *Pritchett v. King,* 56 Ga. App. 788 (194 SE 44), which is cited in 50 AmJur2d 64, Landlord & Tenant, § 1179 (1970) for the following proposition: "Moreover, many courts take the view that a lease for a specified term with the privilege of a renewal on the same terms is equivalent, where such privilege is exercised, to a demise for the full period of the two terms, without any necessity for the execution of a new lease."

As is set forth in *Pritchett v. King,* "It is contended by counsel for the plaintiff that the provisions in the contract giving the lessee the option to renew the lease contemplated the execution of a new lease; and that since the plaintiff had refused to execute a new lease he is entitled to dispossess the defendant, and that the defendant is relegated to an action for damages for a breach of the covenant to renew. It is true that 'a distinction is made between a covenant in a lease for a renewal and a provision therein for the extension of the term at the option of the lessee, the courts treating the latter upon the exercise of the privilege, as a present demise for the full term to which it may be extended and not as a demise for the shorter period with a privilege for a new lease for the extended term.' 16 R. C. L. 885, § 389. Some of the decisions which recognize this distinction hold that where the covenant is one to renew, a new lease should be executed. However, it will be found that most of these decisions deal with the effect of holding over after

the original term, where no notice is given, and that under this principle it is generally considered that where the lessee does give actual notice of his intention to renew the lease in accordance with the provisions of the contract, before the lapse of the original term, that this in law amounts to the execution of a new lease. See *Hamby v. Georgia Iron Co.,* 127 Ga. 792, 802 (56 SE 1033). Certainly this is true in so far as the right of the lessor to dispossess the lessee is concerned. Counsel has cited us to no decision which goes so far. In the present case the renewal clause of the lease provided that the lessee would have the option to renew the lease for one year, or for so long as the lessor renewed his lease on the premises, at a stipulated rental, and on the same terms as set out in the lease contract. This was sufficient to make a definite contract; the renewal was not subject to any conditions except the election of the lessee to exercise the option; and it not being disputed that the lessee gave proper and timely notice of his intention to renew the lease, we hold that this notice operated to extend the lease, at least so far as to defeat the present action to dispossess him. 'The view has been taken that a lease for a specified term with the privilege of a renewal on the same terms is equivalent, where such privilege is exercised, to a demise for the full period of the two terms, without any necessity for the execution of a new lease.' 16 R. C. L. 889, § 392; Ferguson v. Jackson, 180 Mass. 557 (62 NE 965); Orr v. Doubleday, 223 N.Y. 334 (119 NE 552); Flynn v. Bachner, 168 Mich. 424 (134 NW 451, Ann. Cas. 1913C, 641). Compare *Walker v. Wadley,* 124 Ga. 275 (52 SE 904); *Lanham v. McWilliams,* 6 Ga. App. 85 (64 SE 294); *Parker v. Gortatowsky,* 127 Ga. 560 (4) (56 SE 846). The plaintiff was not entitled to dispossess the defendant for any reason urged, and the court did not err in directing the verdict for the defendant." 56 Ga. App. 791.

In light of the foregoing authorities, we conclude that the proper construction of the lease in question is that it was one for renewal on the same terms, requiring no new lease but only notice from the tenant of his intention to exercise his option to renew. As study of the lease itself and these authorities resolves any possible ambiguity in the lease, it is not necessary to look to

extrinsic circumstances, as argued by plaintiff, to determine the intent of the parties to the lease. See *Asa G. Candler, Inc. v. Georgia Theatre Co.*, 148 Ga. 188, 193 (96 SE 226). What plaintiff ultimately urges is that we should look to the parties' conduct to show that their method of renewal in transactions concerning prior similar leases, was to renegotiate the lease and execute a new one. However, this request defies a primary rule of contract construction which is that although extrinsic circumstances may be looked to to explain a contract, they may not add to nor take from it. Code § 20-704 (1). The trial court did not err in excluding this evidence.

As plaintiff's contentions as to the construction of the lease have been found erroneous, the trial court did not err in denying plaintiff's motion for summary judgment, and the judgment being right for this reason will be affirmed, though herein we have rejected in part the trial court's reasoning.

We have held above that a jury question remains whether plaintiff terminated the lease upon the tenant's death. We have gone further to construe the lease to allow a renewal without a new contract. We have held in effect that there is nothing in the lease as drawn which means that defendant is necessarily holding the property wrongfully merely because the "renewal" period has arrived. This discussion has answered plaintiff's Enumerations 1, 2, 3, 4, 6, 7, 8, 11, 12 and 14. Enumeration 13 concerning discovery has been rendered moot by our holding that the case will not be disposed of on defendant's motion here appealed. Enumerations 5,[1] 9,[2] and 10[3] concern the trial court's ruling on defendant's

---

[1] "The lower court erred in finding as fact that the defendant purported to act as the tenant's executor in remaining in possession of the subject premises."

[2] "The lower court erred in finding as fact that defendant's actions between the original tenant's death and the defendant's qualification as executor were efforts to protect and preserve the assets of the tenant's estate and were done in good faith."

[3] "The lower Court erred in finding as fact that, in

acts claimed to have been undertaken as an executor of the deceased tenant's estate. These enumerations involve questions of fact concerning whether defendant is properly positioned to continue the lease as tenant, and these questions must be answered since we have held that the construction of the lease itself does not necessarily oust his claim.

As what we have said above is sufficient to rule on the correctness of the judgments on appeal, and in light of the fact that plaintiff maintains that his discovery is yet incomplete, we conclude that the issues raised by Enumerations 5, 9 and 10 should not be determined here as a matter of law but should remain for trial.

*Judgment granting defendant's motion for summary judgment reversed; judgment denying plaintiff's motion for summary judgment affirmed. Deen and Stolz, JJ., concur.*

SUBMITTED JANUARY 16, 1974 — DECIDED MARCH 15, 1974 — REHEARING DENIED MARCH 29, 1974.

*William T. Gerard,* for appellant.
*David W. Griffeth, Erwin, Epting, Gibson & Chilivis, Nickolas P. Chilivis,* for appellee.

effect, the defendant's actions individually and before qualifying as executor were binding upon the plaintiff, who had no notice or knowledge of the status of the deceased tenant's estate or that of the defendant individually."