BEAVERS *v.* INTERSTATE BOND COMPANY *et al.*

No. 12834.  November 16, 1939.

*R. L. Maynard,* for plaintiff.

*Jones, Powers & Williams* and *Dykes & Dykes,* for defendants.

REID, Chief Justice.  On December 20, 1934, the tax-commissioner of Sumter County, in compliance with the mandate of the Code, § 92-5102, issued an execution against F. G. Beavers (hereinafter referred to as the plaintiff) in the principal sum of $134.70, for unpaid State, county, and school taxes.  The sheriff levied the execution on real estate belonging to the plaintiff, and proceeded to advertise the same for sale.  The plaintiff brought petition against the Interstate Bond Company (hereinafter referred to as the defendant company), W. P. McArthur, sheriff, and S. H. Dykes, for injunction, cancellation, and damages for trespass.  A demurrer was sustained and the action dismissed.  The plaintiff excepted.  It appears from the petition that on February 20, 1935, pursuant to the terms of an agreement between the defendant company and the county board of commissioners of roads and revenues, the tax execution issued against the plaintiff, with numerous others, was transferred to the defendant company by the sheriff of Sumter County.  The plaintiff alleged, that while the defendant company did in fact pay to the proper authorities a sum covering the principal, interest, and costs due on the executions thus transferred, the sum was paid on the "condition that the board of commissioners of roads and revenues would pay to its attorney, S. H. Dykes, 7½% of the proceeds, or the amount so paid by it for the purchase of said executions, as commissions for negotiating the sale; that this plan was adopted for the purpose of evading the law, which makes [void] the transfer and sale of an execution for less than the principal, interest, and costs due thereon.  And your petitioner charges the fact to be that said Interstate Bond Company did not, in the purchase of said fi. fas., including the one of your petitioner, . . pay the full amount due thereon of principal, interest, and costs;" and that by virtue of these facts, and the payment of said commission to Dykes, the

defendant company "did not acquire by said transfer title to said execution." This charge was elaborated in an amendment wherein it was alleged that while one of the resolutions adopted by the county commissioners in connection with the sale of the executions directed the treasurer to pay to Dykes seven and one-half per cent. of the amount paid by the Interstate Bond Company, "for services rendered," Dykes was, at the time of the negotiations, and is, attorney for the defendant company, and was acting for it and at its engagement in the negotiations, and the payment of seven and one-half per cent. of the amount actually paid to Dykes "was in fact a discount claimed by said defendants and allowed and assented to [by] said board of commissioners." It was further alleged that the accrued interest to the time of the transfers on the 1934 tax executions was $288.37, and that this interest was not included in the amount due and paid by the defendant company; "so your petitioner avers that said defendant did not pay . . the full amount of principal and interest and costs due on each of said fi. fas.," and that for this reason the transfers were void and passed no title to the defendant company.

Numerous other attacks are made on the validity of the transfer. It was alleged (1) that the board of commissioners of roads and revenues undertook to "guarantee the validity" of such executions; and that this was beyond the power of the board; (2) that although the executions were transferred by the sheriff, they had never been placed in his hands for collection, and he could not make a valid transfer of the same; (3) that payment was made to the tax commissioner of Sumter County, and not to the sheriff; (4) that the transfer was made before the payment by the defendant company of the amount due under the executions; (5) that the executions were sold in mass, and the statute does not authorize such sale; and (6) that the sale of the executions changed the place of payment from Sumter County to Fulton County, the principal place of business of the defendant company. The petition contained the following allegations: "Said execution in the hands of the said Interstate Bond Company is illegal and void; for that by the payment of the amount alleged to have been paid by the Interstate Bond Company for the purchase of said tax execution, without the knowledge and consent of your petitioner, was a voluntary payment by said Interstate Bond Company, and as a result of such payment, said

tax fi. fa. became fully satisfied and paid, and is now incapable of being enforced, either by the State and county or by the Interstate Bond Company." In an amendment it was alleged as follows: "As previously alleged in the original petition, the taxes called for by said execution has been paid, and at the time of the levy of the execution . . no money or taxes were due by your petitioner to the State nor Sumter County for school purposes;.that said respective branches of the government had received the taxes due it for the year 1934 by your petitioner;" and that said execution "has been fully satisfied and is now null and void," and "said defendants should be required to produce said tax execution in the court for the purpose of being canceled and marked off the record and rendered unto your petitioner." The prayers were, (1) that the sale of the plaintiff's property under the levy be enjoined, (2) that the execution be declared fully satisfied and be canceled of record; (3) for damages for illegal levy, and (4) for general relief.

■ Before the act of 1872 (Code, § 92-7602), a tax execution could not be transferred to a third party paying the tax, so as to entitle such transferee to enforce the same by levy and sale of the property of the defendant in execution. *Smith* v. *Mason,* 48 *Ga.* 177; *State* v. *Wingfield,* 59 *Ga.* 202. Under that act, officers charged with the duty of enforcing tax executions are authorized to transfer a tax execution to "any person," other than the person against whom it was issued, who pays the same. The plaintiff contends that this act was passed to enable property owners to borrow money to pay their taxes and have the execution transferred to the lender to secure the loan, and that it was not the intention of the legislature to authorize a sale and transfer of a tax execution to a third person having no interest in the property, and without the consent of the taxpayer. We are reminded that after the War Between the States there was much loss of property by citizens of this State by levy and sale thereof for taxes; and it is contended that this act was passed during that period, so as to make the tax executions available to the taxpayers as security. Whatever may have been the cause of the passage of the act of 1872, its provisions will not admit of the construction contended for. It authorizes the transfer of a tax execution to "any person" who may pay the same. No broader term could have been found in the

English language, and its use precludes any inference that the payor must have an interest in the property, or otherwise satisfy the conditions on which subrogation will be granted, and, if not, must purchase with the consent and at the request of the taxpayer against whom the execution was issued. See *Ledbetter* v. *Farrar,* 51 *Ga. App.* 742 (181 S. E. 591). Nothing to the contrary was decided in *Thomas* v. *Lester,* 166 *Ga.* 274 (142 S. E. 870), or *Graves* v. *Walker,* 182 *Ga.* 644 (186 S. E. 820).

■ It appears that the defendant negotiated with the board of commissioners of roads and revenues of Sumter County for the purchase of certain executions, including the one against the plaintiff, and entered into a contract with the board to that end. We do not consider, however, that these negotiations with the board and the contract entered into with it either added to or took from the right of the defendant company to pay the execution and have the same transferred to it. The statute, as above construed, permits "any person" to pay and to demand a transfer of the execution. It requires no contract with the board of commissioners, to give the defendant company the right to pay up the execution issued against the plaintiff and to demand a transfer thereof. Accordingly the validity of the transfer does not depend on the validity of the contract made with the board, and its various provisions, but solely on whether there was a compliance with the statute. The fact that the board attempted by the contract to "guarantee the validity" of the executions, or entered into the contract for their sale at all, all of which the plaintiff alleges was beyond their authority, presents no reason why the levy and sale under the execution should not be allowed to proceed. The contract is important merely as showing what was done by the defendant company in securing the transfer.

■ It is true that if the defendant company did not pay the full amount of principal, interest, and costs due under the execution against the plaintiff, the transfer of the execution by the sheriff would not operate to vest legal title thereto in the defendant company so as to entitle it to enforce the same by levy, and sale of the plaintiff's property, since the State and county would still hold the legal title thereto, and would be entitled to proceed thereunder against the plaintiff's property at least for the amount left unpaid by the defendant company. *Wilson* v. *Herrington,* 86 *Ga.*

777 (13 S. E. 129); *County of Laurens* v. *Citizens Bank of Valdosta,* 9 *Ga. App.* 662 (72 S. E. 67); *Interstate Bond Co.* v. *Phœnix Mutual Life Insurance Co.,* 181 *Ga.* 678 (183 S. E. 783). The plaintiff's petition as finally amended, when properly construed, can not be held to make out such a case. While it is distinctly alleged in the petition that the defendant company failed to pay the full amount of accrued interest on the executions transferred to it, including the one issued against the plaintiff, and that the defendant claimed and in fact received a discount in the purchase of said execution, by virtue of the payment by the county treasurer to its attorney of seven and one-half per centum of the amount actually paid by it for said executions, in accordance with the provisions of the contract entered into between the defendant company and the board of commissioners of roads and revenues, these allegations must yield to equally positive and distinct allegations in the petition that the execution has been fully satisfied, and that at the time of the levy thereof "no money or taxes were due by your petitioner to the State nor Sumter County for school purposes; that said respective branches of the government had received the taxes due it for the year 1934 by your petitioner." If, as thus alleged, the execution has been fully paid and satisfied by the defendant company, so that the plaintiff is not due to the State or the county any taxes thereunder, it necessarily follows that there could have been no failure by the defendant company to pay the accrued interest due on said execution, and that the defendant did not purchase said execution at a discount. To purchase an execution at a discount means to purchase it for a less sum than that which upon its face is payable. If this was done, it would follow that the execution has not been satisfied, but that the title thereto remains in the taxing authority at least for collection from the plaintiff of the amount left unpaid by virtue of the discount. The plaintiff alleged, however, that the payment made to the attorney for the defendant company did not have this effect, but alleged that the payment made by the defendant company to the tax-commissioner fully satisfied the State and county as against him for all moneys due under said execution. If this be true, the defendant company should be allowed, under the statute, to enforce the execution against the plaintiff. Under the allegations, the payment by the county commissioners to S. H. Dykes, attorney

for the defendant company, of a sum in the nature of commissions for negotiating the sale of the executions, even if it may have been beyond their powers, affords the plaintiff no defense to the levy of the execution on behalf of the defendant company as transferee. Whether or not such payment was illegal, and whether the plaintiff might, as a citizen and taxpayer, bring proceedings to test its legality, need not now be decided.

■ There is no limit in the statute as to the number of tax executions a person may purchase. While the statute reads in the singular, the Code, § 102-102, declares that in the construction of statutes "The singular or plural number shall each include the other, unless expressly excluded." This rule has been in every Code, beginning with the first in 1863, and it is to be presumed that the legislature had it in mind in the passage of the act in question. It follows that the fact that the defendant company purchased in mass all of the tax executions issued in Sumter County for the year 1934, in which real estate was part of the property taxed, does not affect the validity of the transfer of the execution against the plaintiff. Nor was the transfer void because the defendant company is a corporation with its principal place of business in Fulton County, and that the transfer thereby changed the place of payment from Sumter County to Fulton County. The statute contains no requirement that a purchaser of a tax execution shall be a resident of the county in which it was issued.

■ The statute provides that the transfer shall be made by "the officer whose duty it is to enforce said execution." Tax executions are "directed to all and singular the sheriffs and constables of this State." Code, §§ 92-7401, 39-101. The sheriff is the proper person to enforce such execution, and accordingly to make a valid transfer thereof. It is alleged that the sheriff of Sumter County transferred the tax execution against the plaintiff to the defendant company; and this accords with the transfer which appears on the back of the execution. It is contended, however, that the transfer is void because the execution had not been placed in the hands of the sheriff for collection. The case of *Irwin* v. *McKee*, 25 *Ga.* 646, is cited. It was there held that a sheriff has no authority, pending a suit on a promissory note, to collect the amount due thereunder from the defendant, and that his conduct in so doing is not binding on the plaintiff. That ruling can not be

applied to the facts of the present case. If the sheriff entered the transfer on the execution, as is alleged, it would seem necessarily to follow that it was in his hands for collection, whether he did so by collection of the amount due thereunder from the plaintiff, or by a transfer to a purchaser thereof. At any event, the statute merely provides that he shall transfer the execution to the party paying the same, upon the request of such party. This, it appears, he did in the present case. It is also pointed out that the money was not paid to the sheriff. Again we look to the statute. It merely requires that the transferee "shall pay" the tax. It appears that the money was paid by the defendant company to the tax-commissioner of Sumter County, and it is expressly alleged that the money was distributed to the proper governmental agencies entitled thereto. The fact that the money did not pass through the hands of the sheriff is manifestly immaterial. Nor do we think that it matters that the defendant company had not paid the money over to the tax-commissioner at the time the transfer was made, since it affirmatively appears that this was done a short time thereafter, and before the levy on the property of the plaintiff. The petition stated no cause of action for the relief sought. The judge was correct in sustaining the demurrer.

Judgment affirmed. All the Justices concur.