S93A0753. ALEXANDER INVESTMENT
GROUP, INC. v. JARVIS.
(435 SE2d 609)

FLETCHER, Justice.

Alexander Investment Group, Inc. is a private corporation engaged in the business of purchasing tax executions and real property at tax sales. In April and May 1992, Alexander purchased from the DeKalb County Tax Commissioner ad valorem tax executions[1] representing taxes levied against three separate tracts of land. As transferee, Alexander placed these executions in the hands of the sheriff for collection. Pursuant to a levy of the executions upon the respective tracts, on August 4, 1992, the sheriff sold the properties at public auction to the highest bidder for sums in excess of the total of the taxes, interest, commissions, cost, penalties and expenses of sale authorized by applicable state law. See OCGA § 48-5-161. After deducting the commissions, cost, penalties and expenses of sale, on August 7, 1992, the sheriff remitted to Alexander the sums due on the tax executions and retained the excess proceeds derived from these tax

---

[1] The terms tax execution and tax fieri facias or tax fi. fa. have over the years been used interchangeably and refer to one and the same type of writ.

sales.

Written notice was mailed to the delinquent taxpayers, as named in the tax executions, advising them of the excess funds held by the sheriff. On September 22, 1992, Alexander filed a petition for mandamus against the sheriff demanding delivery of the excess proceeds resulting from the tax sales. Despite the sheriff's notification, the delinquent taxpayers had made no claim for the excess funds at the time a hearing was conducted on Alexander's petition. The trial court denied Alexander's petition for mandamus and Alexander appeals. We affirm.

1. OCGA § 48-4-5 appears to be the only Georgia Code provision directly addressing the disposition of excess proceeds from a tax sale of returned property.[2] This section provides:

> If there is any excess after paying taxes, costs, and all expenses of a sale, it shall be immediately paid to the person authorized to receive the excess.

Absent an express definition of who is "the person authorized to receive the excess," Alexander claims entitlement because, as the transferee of the tax executions, it "stands in the shoes of DeKalb County" and has the same rights and duties DeKalb County had as a result of the ownership of the tax executions. Alexander relies on *Ferris v. Van Ingen & Co.*, 110 Ga. 102 (35 SE 347) (1900) and *Freeman v. Holcombe*, 67 Ga. 337 (1881) for this proposition.

In both *Ferris* and *Freeman*, this court stated that the transferee acquires by the transfer of a tax execution all rights of the taxing authority. In both cases, however, the issue before this court was the right of a transferee to enforcement of the execution and priority of payment from the proceeds of the tax sale.[3] Neither case speaks to the issue of who is responsible for holding excess tax sale funds. Additionally, contrary to Alexander's contention, neither *Ferris* nor *Freeman* stands for the proposition that a transferee of a tax execution becomes a new tax authority.

2. We hold that Alexander has no legal claim to the excess sales proceeds and its mandamus petition was properly denied. This hold-

---

[2] OCGA § 48-4-2 provides the procedure for assessment and disposition of property which has not been returned for taxes. This section specifically provides that the surplus from a sale after the payment of taxes and costs shall be paid over to the county governing authority as part of the education fund, subject to the claim of the true owner within four years. By its express terms, § 48-4-2 is not applicable to tax sales where the property is returned for taxes. *Lumpkin v. Cureton*, 119 Ga. 64 (45 SE 729) (1903).

[3] See also OCGA § 48-3-19 which, using almost identical language, provides that the transferee has the same rights as to enforcing the execution and priority of payment as might have been exercised before the transfer. This section grants to the transferee only the enforcement and priority rights previously held by the taxing authority.

ing is supported by and consistent with our decision in *Morrison v. Slaton*, 148 Ga. 294 (96 SE 422) (1918). In *Morrison*, the sheriff conducted a tax sale of land, the record owner of which was recently deceased and no administrator of his estate had been appointed. The sheriff satisfied the tax executions with the sale proceeds, retained the excess funds, and made an entry in his sales book that the excess funds were to be paid to the heirs of the record property owner. No demand for the excess funds was made upon the sheriff within his lifetime. Years later, the property owner's heirs sued the sheriff's estate for the excess funds plus interest.

In determining that the sheriff had a duty to pay the excess funds to the administrator of the property owner's estate and that interest should accrue from the time the administrator was appointed, we found it necessary to first define the sheriff's duties and obligations with respect to excess funds. There, we held that the excess funds were rightfully held by the sheriff and that his relation to the surplus was fiduciary, the monies being held by the sheriff for the property owner's estate.[4] Id. at 298. Citing to § 1175 of the Civil Code, the predecessor to § 48-4-5, we stated:

> But there being no legal representative [of the property owner's estate], the sheriff would not have been authorized to pay it to any one else. Had he done so, such payment would have afforded him and his surety no protection as against creditors of [the property owner], or such heirs as may not have participated in receiving the money.

Id.

Although *Morrison* did not involve a transferee of a tax execution, we hold that the same legal principles apply where the tax execution is transferred, thereby placing the responsibility of holding excess funds in the levying officer. The language of § 48-4-5 directing that excess funds be paid over to the "person authorized to receive the excess" should be consistently construed. Thus, regardless of who owns the tax execution, the sheriff holds excess tax sale funds as the fiduciary of the record property owner and is not authorized to re-

---

[4] In contrast to a sheriff's fiduciary duty with respect to excess funds, a tax execution transferee only acquires legal title to the tax execution, a debt instrument, so as to entitle the transferee to enforce the execution by levy and sale. *Beavers v. Interstate Bond Co.*, 189 Ga. 201 (6 SE2d 283) (1939). The transferee, similar to a purchaser at a tax sale, does not obtain legal title to the property free of encumbrances or the right of redemption and does not even obtain an interest in the rents and profits from the land subject to sale. *Beckham v. Lindsey*, 22 Ga. App. 174 (95 SE 745) (1918). As a debt instrument, the tax execution represents only an obligation for the amount of the debt. When the debt is satisfied, the debt instrument is effectively cancelled.

lease such funds to the transferee of the tax execution.[5] See *Zugar v. Scarbrough,* 186 Ga. 310, 323 (197 SE 854) (1938) (property owners were the persons authorized to receive the excess funds and the sheriff was the proper official to pay it); *Simmons v. May,* 53 Ga. App. 454 (186 SE 441) (1936) (referring to property owner as the person authorized to receive the excess funds). To hold otherwise would subject sheriffs to suit by the property owners and their heirs and creditors. *Morrison,* 148 Ga. at 298; see *Simmons,* supra (one holding a lien on property sold at a tax sale has a right to excess funds superior to that of the property owner).

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 1, 1993.

*Bedford, Kirschner & Venker, Thomas J. Venker, Barnes, Browning, Tanksley & Casurella, George T. Smith,* for appellant.
*Robert H. Walling, Lisa F. Stuckey,* for appellee.

---

[5] In this opinion, we address the issue of whether Alexander has a clear legal right to require the sheriff to deliver the excess funds. We do not address any possible time bar to making claims, escheat, or the applicability of the Disposition of Unclaimed Property Act. Ga. L. 1972, p. 762 et seq.