A05A1226, A05A1227. SCOTT v. VESTA HOLDINGS I, LLC et al.;
and vice versa.
(620 SE2d 447)

BARNES, Judge.

In Case No. A05A1226, Tom Scott, the Tax Commissioner of DeKalb County ("the Commissioner"), appeals the trial court's judgment granting the money rule petition of Vesta Holdings I, LLC

("Vesta Holdings").[1] The Commissioner contends the trial court erred because Georgia law requires that tax fieri facias, or fi. fa.[2] ("tax executions"), be satisfied by levy and sale and requires tax commissioners to hold excess proceeds from the sales as a fiduciary of the property owners of record at the time of the sale. He also contends that a money rule is not a proper remedy for collection of tax executions from him. We disagree and affirm the grant of the money rule to Vesta Holdings.

In its cross-appeal, Case No. A05A1227, Vesta Holdings contends the trial court erred by denying its petition for the 20 percent interest authorized by OCGA § 15-13-3 and the interest on its tax executions authorized by OCGA §§ 48-3-20 and 48-2-40. Because the trial court's order does not find that good cause was shown by the Commissioner sufficient to deny Vesta Holdings's request for 20 percent interest, we must vacate that part of the judgment and remand the case to the trial court for further proceedings.

The record shows that Vesta Holdings filed a petition for a money rule requiring the Commissioner[3] to remit the sums Vesta Holdings previously demanded on its tax executions plus 20 percent per annum interest. The petition alleged that Vesta Holdings was the nominee of Heartwood 11, LLC ("Heartwood"), that Heartwood is regularly engaged in purchasing and collecting on tax executions, and that, as Heartwood's nominee, Vesta Holdings held certain tax executions. The petition further alleged that the Commissioner had conducted a number of tax sales of properties subject to the tax executions held by Vesta Holdings that produced proceeds in excess of the amounts necessary to satisfy the tax executions for which the sales were held, and that the Commissioner was holding those excess amounts in his registry account.

According to the petition, Vesta Holdings made demand on the Commissioner to satisfy Vesta Holdings's tax executions on those properties from these excess proceeds, but the Commissioner refused the demand. As a result, Vesta Holdings sought a money rule under OCGA § 15-13-1,[4] 20 percent interest under OCGA § 15-13-3,[5] costs,

---

[1] Although Scott filed this appeal in the Supreme Court of Georgia, the appeal and cross-appeal were transferred to this court because money rule cases are not within the jurisdiction of the Supreme Court even when mandamus is sought.

[2] "The terms tax execution and tax fieri facias or tax fi. fa. have over the years been used interchangeably and refer to one and the same type of writ." *Alexander Investment Group v. Jarvis*, 263 Ga. 489, n. 1 (435 SE2d 609) (1993).

[3] The Commissioner is an ex-officio sheriff. See OCGA § 48-5-137.

[4] "All sheriffs, deputy sheriffs, coroners, jailers, constables, and other officers of court shall be liable to all actions and disabilities which they incur in respect of any matter or thing relating to or concerning their respective offices."

[5] (a) If any sheriff, coroner, magistrate, constable, clerk of the superior court, or

and issuance of a writ of mandamus absolute or a permanent injunction prohibiting the Commissioner from proceeding with levies and sales for delinquent tax executions when prior tax sales proceeds could be applied.

The Commissioner answered denying liability and subsequently filed an amended answer adding a counterclaim and cross-claim for interpleader and declaratory relief. The petition for declaratory judgment sought a ruling on whether the Commissioner was "required and entitled to hold excess tax sale proceeds as a fiduciary for the record property owners . . . or whether those funds may properly be paid to a tax execution transferee."[6] The interpleader sought permission to pay into the registry of the court the excess tax sale proceeds on all of the properties involved in the case. The defendants in interpleader were the 18 individuals or entities who were property owners of record when the properties were sold by the Commissioner in the tax sales.

Subsequently, the Commissioner filed a brief contending that Vesta Holdings purchased the tax executions from him under OCGA § 48-3-19[7] and then held them until the Commissioner conducted tax sales on the property covered by Vesta Holdings's tax executions for tax liabilities for years after those covered by Vesta Holdings's tax executions. He further alleged that Vesta Holdings's plan was to purchase a tax execution, to sit on its rights to levy and sell the property to collect the tax execution, to allow interest to accrue at the statutory rate of 12 percent per year, and then to demand the excess proceeds when the property was sold at a later tax sale. He also contended that Georgia law prohibited him from satisfying Vesta Holdings's tax executions in that manner and that Vesta Holdings's remedy was to levy and sell the property to which its tax executions related.

---

attorney at law fails, upon application, to pay to the proper person or his attorney any money he may have in his hands which he may have collected by virtue of his office, the party entitled thereto or his attorney may serve such officer with a written demand for the same. If not then paid, for such neglect or refusal the officer shall be compelled to pay interest at the rate of 20 percent per annum upon the sum he has in his hands from the date of the demand, unless good cause is shown to the contrary.

(b) A copy of the demand produced in court, verified by affidavit stating when and where the original was served upon the officer, shall be prima-facie evidence of the date and service thereof.

[6] We note that the Commissioner's petition for a declaratory judgment came over a year after Vesta Holdings's earliest demand for payment and after he had paid the full amount of the excess proceeds from some sales to other claimants.

[7] This Code section was repealed by Ga. L. 2002, p. 1481, § 1, effective May 21, 2002.

Relying on *Nat. Tax Funding v. Harpagon Co.*, 277 Ga. 41 (586 SE2d 235) (2003), the trial court granted Vesta Holdings's petition for the money rule. This ruling authorized Vesta Holdings to satisfy its tax executions from the excess proceeds the Commissioner collected from subsequent tax sales on the same parcels of property.

*Case No. A05A1226*

1. As the trial court found, this case is controlled by our Supreme Court's decision in *Nat. Tax Funding*:

> All owners of non-exempt real and tangible personal property are subject to taxation on the property's fair market value as of January first of each year. [OCGA §§ 48-5-1; 48-5-3; 48-5-9; 48-5-10.] In order to secure payment of these taxes when they fall delinquent, the law creates a lien which extends not only to the property giving rise to the tax obligation, but also to all other property owned by the taxpayer. [OCGA § 48-2-56 (a).] Generally, a lien for delinquent ad valorem taxes arises at the time the taxes become due and unpaid, and "covers all property in which the taxpayer has any interest from the date the lien arises until such taxes are paid." [Id.] When taxes are not paid, the Tax Commissioner is authorized to issue a writ of fieri facias (or tax execution), which is a directive to the appropriate officer (often the sheriff) to levy upon the property, sell it and collect the unpaid taxes. [OCGA §§ 48-3-3; 48-5-127 (a) (6); 48-5-161.] *Following a tax sale, after the payment of taxes, costs, and other expenses, any excess proceeds may be claimed by the parties entitled to receive them, including those who hold other liens against the property*. [OCGA § 48-4-5. If the tax sale proceeds are insufficient to fully pay an outstanding tax lien, the tax lienholder may levy upon and collect from the taxpayer's other property. See OCGA § 48-2-56 (a).]

(Punctuation omitted; emphasis supplied.) Id. at 42 (1). See Annual Survey of Georgia Law, 56 Mercer L. Rev. 395, 411 (2004). The Supreme Court reiterated its interpretation of OCGA § 48-4-5 later in the opinion:

> [F]ollowing a tax sale, the holder of a competing tax lien has two options — it may either file a claim to collect against any proceeds from the sale, or it may assert its rights following the tax sale via a statutory claim for redemption, in which case it obtains a first priority lien on the property, which it

may then enforce by levy and sale. With these two options, the legislature has ensured that holders of competing tax liens can take adequate steps to protect their interest in property sold at a tax sale to another lienholder.

*Nat. Tax Funding v. Harpagon Co.*, supra, 277 Ga. at 44 (3).

The rationale for this interpretation flows from former OCGA § 48-3-19 (a) (1) and OCGA §§ 48-4-5 and 48-2-56. Before it was repealed, OCGA § 48-3-19 (a) (1) provided:

Whenever any person other than the person against whom an execution has been issued pays an execution issued for state, county, or municipal taxes . . . , the officer whose duty it is to enforce the execution, upon the request of the party paying the execution, shall transfer the execution to the party so paying. The person to whom the execution is transferred shall have the same rights as to enforcing the execution and priority of payment as might have been exercised or claimed before the transfer.

Therefore, "Vesta [Holdings] stood in the same shoes as [a county seeking funds from an excess tax sale]. *Alexander Investment Group, Inc. v. Jarvis,* [supra, 263 Ga. at 490, n. 3]." *Vesta Holdings I, LLC v. Tax Commr. of Fulton County*, 259 Ga. App. 717, 718 (1) (578 SE2d 293) (2003). The significance of this footing is that Vesta Holdings's tax executions had higher priority than any other claims or liens except those for state taxes and for county taxes, if any, which were older than those held by Vesta Holdings. Id. at 718-720 (2).

With a few exceptions, not relevant here, OCGA § 48-2-56 (a) and (b) allow holders of unpaid liens for state, county or municipal taxes to recover from all property in which the delinquent taxpayer had any interest until the taxes are paid, and give the holder of the tax liens the right to be paid "before any other debt, lien, or claim of any kind." See also OCGA § 48-5-28 (a) ("taxes shall be paid before any other debt, lien, or claim of any kind"). The version of OCGA § 48-4-5[8] relevant to this appeal provided that "[i]f there is any excess after paying taxes, costs, and all expenses of a sale, it shall be immediately paid to the person authorized to receive the excess."[9]

---

[8] The Commissioner agrees that the now repealed OCGA § 48-3-19 (a) and the prior version of OCGA § 48-4-5 apply in this appeal.

[9] The current OCGA § 48-4-5 authorizes the Commissioner to distribute any excess tax sale proceeds, after payment of taxes, costs, and expenses, "to intended parties, including the owner as their interest appears and in the order of priority in which their interest exists" through an interpleader action in superior court.

In this appeal, Vesta Holdings, as the transferee of the tax executions, stood "in the shoes of the State, county, or city by whose authority the tax fi. fa. was issued. [It had] the same rights and priorities that the State, county, or city would have had. Taxes, under our law, are the highest lien." *Ferris v. Van Ingen & Co.*, 110 Ga. 102, 119 (35 SE 347) (1900). Therefore, Vesta Holdings was entitled to recover from the Commissioner the amounts necessary to pay its tax executions from the excess proceeds of the tax sales before any payments to the owners of record at the time of the tax sale.

The Commissioner's position in this litigation has consistently overlooked or rejected the fact that Vesta Holdings was entitled to collect from all property in which the delinquent taxpayer had any interest, that these excess sale proceeds were such a property interest, and that, as the holder of the tax liens, Vesta Holdings had the right to be paid "before any other debt, lien, or claim of any kind" may be claimed by the parties entitled to receive them, including those who hold other liens against the property. OCGA § 48-2-56 (a), (b); *Vesta Holdings I, LLC v. Tax Commr. of Fulton County*, supra, 259 Ga. App. at 720 (2) (b).

Further, the Commissioner's reliance on *Alexander Investment Group v. Jarvis*, supra, 263 Ga. 489, is misplaced. That case merely held that the holder of a tax execution was only entitled to recover the amount of tax debt evidenced by the execution. Once that debt was paid, it had no further entitlement to collect from the excess proceeds. Id. at 491 (2), n. 4. The case does not stand for the proposition that a tax execution may only be satisfied by levy and sale.

2. The Commissioner's allegation that a money rule petition is not authorized in cases of this nature is without merit. Pretermitting whether the Commissioner would be subject to a money rule on any other basis, the Commissioner is subject to a money rule as an ex-officio sheriff under OCGA § 48-5-137. OCGA § 15-13-2 (4);[10] *Barrett v. Marathon Investment Corp.*, 268 Ga. App. 196, 199 (4) (601 SE2d 516) (2004).

*Case No. A05A1227*

3. The trial court's order on interest, attorney fees, and costs merely states that Vesta Holdings is entitled to recover "legal interest *from the date of this order only*. The court denies plaintiff's request for attorney's fees and costs." Collection of interest in money rule cases

---

[10] "Any sheriff shall be liable to an action for damages or an attachment for contempt of court, at the option of the party, whenever it appears that the sheriff has injured the party by: … (4) Neglecting to pay over to the plaintiff or his attorney any moneys collected by the sheriff by virtue of any fi. fa. or other legal process."

is controlled by OCGA § 15-13-3 (a), which states that for neglecting or refusing to pay what is owed "the officer shall be compelled to pay interest at the rate of 20 percent per annum upon the sum he has in his hands from the date of the demand, unless good cause is shown to the contrary." As the trial court made no finding that good cause was shown for the Commissioner's refusal to honor Vesta Holdings's demands, we must vacate this part of the trial court's judgment and remand the case for further proceedings to determine whether the 20 percent interest required by OCGA § 15-13-3 (a) must be made part of the trial court's judgment. See *MacDougald v. Phillips*, 262 Ga. 778 (425 SE2d 652) (1993); *Bill Parker & Assoc. v. Rahr*, 216 Ga. App. 838, 842 (5) (456 SE2d 221) (1995).

Further, the trial court's final order requiring the Commissioner "to remit the sums previously demanded by plaintiff for its tax executions" does not explicitly grant or deny Vesta Holdings the interest of one percent per month authorized by OCGA §§ 48-3-20 and 48-2-40 which Vesta Holdings included in its previous demands. Therefore, the trial court should clarify this part of its order when it considers whether good cause was shown by the Commissioner sufficient to justify the denial of interest under OCGA § 15-13-3 (a).

*Judgment affirmed in Case No. A05A1226. Judgment vacated and case remanded with direction in Case No. A05A1227. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED AUGUST 23, 2005.

*William J. Linkous III, Sam L. Brannen, Jr.*, for appellant.
*Proctor, Chambers & Hutchins, Robert J. Proctor, Bradley A. Hutchins, Adam C. Caseky*, for appellees.