**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

April 26, 2013

# In the Court of Appeals of Georgia

A13A0093. IGLESIA DEL DIOS VIVO COLUMNA Y APOYO   BA-006
  DE LA VERDAD LA LUZ DEL MUNDO, INC. v.
  DOWNING.

BARNES, Presiding Judge.

Iglesia Del Dios Vivo Columna Y Apoyo De La Verdad La Luz Del Mundo, Inc. (the "Appellant") appeals from the trial court's order granting summary judgment to Gail Downing, in her official capacity as Tax Commissioner of Cobb County (the "Tax Commissioner") and denying summary judgment to Appellant. This case turns on the legal question of whether the Tax Commissioner was authorized to use excess funds generated from a tax sale of property in 2007 to satisfy delinquent taxes owed on the property for tax years 2008-2010. Because we conclude that the Tax Commissioner's actions were contrary to Georgia case and statutory law, we reverse the trial court's decision.

The material facts are undisputed. In January 2007, the Tax Commissioner conducted a levy and tax sale of property located at 1671 Sams Street, Marietta, Cobb County, Georgia (the "Property"). The levy was for delinquent ad valorem taxes owed for the years 2004-2006. Appellant, a church, owned and occupied the Property at the time of the tax sale.[1]

JB Holdings, Inc. purchased the Property at the tax sale, and a tax deed was executed in its favor, subject to Appellant's right of redemption. The tax sale generated proceeds in excess of the delinquent taxes that were owed on the Property. The Tax Commissioner disbursed a portion of the excess funds to a creditor bank which held a security deed on the Property. Approximately $38,000 in excess funds remained after the disbursement to the security deed holder.

Appellant remained in possession of the Property after the tax sale, and JB Holdings did not foreclose upon Appellant's statutory right of redemption.[2] In 2008,

---

[1] Although a church, Appellant apparently failed to file for the proper exemption from taxation in the first instance.

[2] Title in land sold at a tax sale can be restored to the owner at the time of the sale, referred to as the "defendant in fi. fa.," through the payment of the statutory amount of redemption (a) at any time within 12 months from the date of the tax sale, and (b) at any time after the tax sale until the right to redeem is foreclosed by the tax deed purchaser giving of the notice prescribed by OCGA § 48-4-45. See OCGA § 48-4-40; *Croft v. Fairfield Plantation Property Owners Assn.*, 276 Ga. App. 311, 313 (1)

2009, and 2010, ad valorem taxes were not paid on the Property. The delinquent taxes owed for those years totaled approximately $4,700. The Tax Commissioner satisfied the unpaid taxes for years 2008-2010 out of the excess funds from the 2007 tax sale that otherwise would have been disbursed to Appellant.

In February 2011, Appellant sent a letter to the Tax Commissioner demanding payment of the excess funds from the 2007 tax sale. Appellant further demanded that the Tax Commissioner cease and desist from using the excess funds to satisfy delinquent ad valorem taxes that accrued after the 2007 tax sale.

The Tax Commissioner filed an interpleader action and deposited the remaining excess funds from the 2007 tax sale into the superior court registry. Those funds were awarded to Appellant in the interpleader action, but that action apparently did not address the issue of the Tax Commissioner's previous deduction of the approximately $4,700 from the funds to satisfy the 2008-2010 taxes.[3]

_____

(623 SE2d 531) (2005). In the present case, Appellant did not exercise its right to redeem within 12 months from the date of the 2007 tax sale, but JB Holdings did not foreclose Appellant's right to redeem during the ensuing years. Appellant has informed this Court that following the inception of the instant appeal in 2012, JB Holdings foreclosed the right of redemption, obtained a quiet title order, and took possession of the Property.

[3] At oral argument, we inquired as to whether principles of res judicata and collateral estoppel had any application in this case in light of the interpleader action.

3

Separate from the interpleader action, Appellant filed a money rule petition against the Tax Commissioner pursuant to OCGA § 15-13-3.[4] Appellant sought to recover the approximately $4,700 in excess funds from the 2007 tax sale that had been disbursed by the Tax Commissioner to pay the delinquent taxes on the Property for the years 2008-2010. It is the money rule petition brought by Appellant that is the subject of this appeal.

---

But as counsel for Appellant has pointed out and as our independent review of the record has confirmed, the issue of whether the interpleader action had any res judicata or collateral estoppel effect was not raised by the parties in their argument below or ruled upon by the trial court in its summary judgment order. "Appellate courts do not consider whether summary judgment should have been granted for a reason not raised below because, if they did, it would be contrary to the line of cases holding that a party must stand or fall upon the position taken in the trial court." (Citation and punctuation omitted.) *Wellons, Inc. v. Langboard, Inc.*, 315 Ga. App. 183, 186 (1) (726 SE2d 673) (2012). See also *Nodvin v. West*, 197 Ga. App. 92, 95 (3) (a) (397 SE2d 581) (1990) ("As the specific ground of collateral estoppel was never made a timely issue before the trial court, no question concerning this matter is presented for appellate review.").

[4] The parties also discussed at oral argument whether JB Holdings, as the tax deed purchaser, should have been joined as a necessary party to the suit. But, as with the issues of res judicata and collateral estoppel previously discussed, the issue of whether JB Holdings was a necessary party was not raised by the Tax Commissioner or ruled upon by the trial court, and "issues presented for the first time on appeal furnish nothing for this Court to review." (Citation and punctuation omitted.) *Kammerer Real Estate Holdings v. PLH Sandy Springs*, 319 Ga. App. 393, 398 (3) (734 SE2d 249) (2012).

4

In June 2011, Appellant moved for summary judgment, contending that it was entitled to the approximately $4,700 in excess funds from the 2007 tax sale and that the Tax Commissioner was not authorized to satisfy the delinquent ad valorem taxes for 2008-2010 out of those funds. Appellant argued that JB Holdings, as the tax deed purchaser, was solely responsible for the taxes that accrued on the Property in the years after the tax sale. The Tax Commissioner cross-moved for summary judgment, contending that Appellant, as the defendant in fi. fa., was jointly liable with JB Holdings for the delinquent taxes and that it thus was entitled to satisfy the unpaid taxes out of the excess funds.

After hearing oral argument, the trial court entered an order denying Appellant's motion for summary judgment and granting the Tax Commissioner's motion for summary judgment. The trial court concluded that, while JB Holdings, as the tax deed purchaser, was obligated to pay the ad valorem taxes that accrued on the Property after the 2007 tax sale, Appellant continued to have a sufficient interest in the Property after the sale to be jointly liable for those taxes. In this regard, the trial court concluded that Appellant, the defendant in fi. fa., retained a taxable interest in the Property because it remained in possession of the Property and its right of redemption had not been foreclosed upon by JB Holdings. Having reached this

5

conclusion, the trial court found as a matter of law that the Tax Commissioner acted properly in using the excess funds from the 2007 tax sale (which otherwise would have been paid out to Appellant) to satisfy the delinquent taxes owed on the Property for the years 2008-2010.

1. Appellant contends that the trial court erred in holding that Appellant, as the defendant in fi. fa., remained liable for ad valorem taxes that accrued on the Property after the tax sale because it remained in possession of the Property and JB Holdings had not foreclosed upon the right of redemption. According to Appellant, Georgia case and statutory law reflect that JB Holdings, as the tax deed purchaser, was the party responsible for taxes that accrued on the Property after the tax sale unless and until the right of redemption had been exercised. Consequently, Appellant maintains that the trial court committed reversible error in holding that the Tax Commissioner was authorized to use the excess funds from the 2007 tax sale of the Property that otherwise were owed to Appellant to satisfy the delinquent ad valorem taxes for years 2008-2010. We agree.

Under Georgia law, a tax commissioner holds any excess funds generated by a tax sale in a fiduciary capacity, see *Alexander Investment Group v. Jarvis*, 263 Ga. 489, 491-492 (2) (435 SE2d 609) (1993), and the disbursement of those funds is

governed by OCGA § 48-4-5. See *Alexander Investment Group*, 263 Ga. at 490 (1). That statute provides that any excess funds existing "after paying taxes, costs, and all expenses of a sale made by the tax commissioner" shall be distributed "to the owner or owners as their interests appear in the order of priority in which their interests exist." OCGA § 48-4-5 (a). Pursuant to this provision, a tax commissioner is authorized to use the excess funds to satisfy any outstanding ad valorem taxes owed by the defendant in fi. fa. that accrued on the subject property *before the tax sale*. See *Mulligan v. Security Bank of Bibb County*, 280 Ga. App. 248, 250 (1) (633 SE2d 629) (2006). But the same is not true where the outstanding ad valorem taxes accrued on the subject property *after the tax sale*, because the tax deed purchaser is liable for those taxes, as reflected by precedent of our Supreme Court and by OCGA § 48-4-42, which addresses the amount payable for redemption.

In *Patterson v. Florida Realty & Finance Corp.*, 212 Ga. 440, 441 (1) (b) (93 SE2d 571) (1956), the Georgia Supreme Court concluded that a tax deed purchaser is responsible for ad valorem taxes that accrue on the subject property after a tax sale during the redemption period. The Supreme Court explained:

> While it is true that title which the [tax deed] purchaser acquires in consequence of a tax sale is not a perfect, fee-simple title, but is a

7

defeasible title which terminates upon redemption within the time prescribed by statute, until redeemed, the [tax deed] purchaser acquires an interest in the property even during the time within which it might be redeemed, *which is sufficient to render him liable for taxes accruing upon the property*.

(Emphasis supplied.) Id. Likewise, in *National Tax Funding, L. P. v. Harpagon Co.*, 277 Ga. 41, 43 (1) (586 SE2d 235) (2003), the Georgia Supreme Court stated that although a tax deed purchaser is not entitled to exclusive possession of the property until the right of redemption has been terminated, "[a] tax deed vests the purchaser with a defeasible (*and, incidentally, taxable*) fee interest in the property." (Emphasis supplied.) *Patterson* and *National Tax Funding, L. P.* are controlling Supreme Court authority reflecting that the tax deed purchaser (in this case, JB Holdings) is the party responsible for taxes accruing on the property after the tax sale, even during the period when the property could still be redeemed by the defendant in fi. fa. Cf. *Croft*, 276 Ga. App. at 313-314 (1) (tax deed purchaser was responsible for payment of homeowner's association assessments incurred after tax sale, although defendant in fi. fa.'s right to redeem the property had not been foreclosed upon by the purchaser).

OCGA § 48-4-42 also supports the conclusion that the tax deed purchaser is responsible for the ad valorem taxes that accrue on the property after the tax sale

during the redemption period. That statute, which addresses the amount that must be paid by the defendant in fi. fa. to redeem the property sold at the tax sale, provides in relevant part:

> The amount required to be paid for redemption of property from any sale for taxes as provided in this chapter, or the redemption price, shall with respect to any sale made after July 1, 2002, be the amount paid for the property at the tax sale, as shown by the recitals in the tax deed, *plus any taxes paid on the property by the purchaser after the sale for taxes*, plus any special assessments on the property, plus a premium of 20 percent of the amount for the first year or fraction of a year which has elapsed between the date of the sale and the date on which the redemption payment is made and 10 percent for each year or fraction of a year thereafter.

(Emphasis supplied.) OCGA § 48-4-42. By including in the redemption price the amount of taxes paid by the tax deed purchaser after the sale, OCGA § 48-4-42 contemplates that the tax deed purchaser will be responsible for paying the taxes and only requires the defendant in fi. fa. to reimburse the purchaser if he or she chooses to redeem the property.

The trial court, in reaching the conclusion that a defendant in fi. fa. can be held liable for ad valorem taxes accruing on the subject property after a tax sale, relied upon OCGA § 48-5-9, which provides that

[t]axes shall be charged against the owner of property if the owner is known and against the specific property itself if the owner is not known. Life tenants and those who own and enjoy the property shall be chargeable with the taxes on the property.

Applying OCGA § 48-5-9 in the case of tax sales, the trial court concluded that Appellant, as defendant in fi. fa., retained a sufficient ownership interest in the Property after the tax sale to be held jointly liable with JB Holdings for the taxes that had accrued. In concluding that Appellant retained a sufficient ownership interest, the trial court noted that Appellant's right of redemption had not been foreclosed upon by JB Holdings at that point and that Appellant remained in possession of the Property.

It is true that before the right to redemption has been foreclosed upon by the tax deed purchaser, the defendant in fi. fa. retains an interest in the subject property. In this respect, the defendant in fi. fa. retains the right to possess the property until the redemption period has been terminated, and the tax deed purchaser "is not entitled to possession, or to rents, issues, and profits during the time allowed for redemption." (Citation and punctuation omitted.) *Whitaker Acres, Inc. v. Schrenk*, 170 Ga. App. 238, 240 (2) (316 SE2d 537) (1984). Moreover, a tax deed purchaser does not have fee simple title to the property purchased at the tax sale, but rather a defeasible title

subject to the defendant in fi. fa.'s right to redeem. See *National Tax Funding, L. P.*, 277 Ga. at 43 (1).

It does not follow, however, that a defendant in fi. fa. should be held liable under OCGA § 48-5-9 for ad valorem taxes on the subject property that accrued after the tax sale during the redemption period. As previously noted, our Supreme Court in *Patterson* and *National Tax Funding, L. P.* concluded that the tax deed purchaser is liable for ad valorem taxes that accrue on the property after the tax sale, and there is nothing in those binding opinions suggesting that a defendant in fi. fa. should be held jointly and severally liable for those taxes.

Furthermore, it is well-settled that

a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes in pari materia, are construed together, and harmonized whenever possible, so as to ascertain the legislative intendment and give effect thereto.

(Footnote omitted.) *Aimwell, Inc. v. McLendon Enterprises*, 318 Ga. App. 394, 397 (1) (734 SE2d 84) (2012). Thus, OCGA § 48-5-9 must be read together with OCGA § 48-4-42, which, as discussed above, reflects that the tax deed purchaser is the party responsible for paying ad valorem taxes accruing after the tax sale, with the defendant

in fi. fa. only responsible for reimbursing the purchaser for the taxes if the defendant chooses to redeem the property. When construed with OCGA § 48-4-42, the "owner" of the property against whom the ad valorem taxes can be charged under OCGA § 48-5-9 is the tax deed purchaser, not the defendant in fi. fa. Alternatively, to the extent that the two statutes conflict, the more specific tax statute, OCGA § 48-4-42, must govern over the more general one, OCGA § 48-5-9. See *Hubert Properties, LLP v. Cobb County*, 318 Ga. App. 321, 323 (1) (733 SE2d 373) (2012) (noting that "a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any inconsistency between them") (citation and punctuation omitted). Accordingly, contrary to the trial court's conclusion, OCGA § 48-5-9 does not authorize charging Appellant, as defendant in fi. fa., with the taxes that accrued on the Property after the tax sale during the redemption period.

For these combined reasons, we conclude the trial court erred in holding that the delinquent ad valorem taxes owed on the Property for the years 2008-2010 could be paid from the excess funds owed to Appellant, as defendant in fi. fa., from the 2007 tax sale. Based on the Supreme Court cases of *Patterson* and *National Tax Funding, L. P.* and on the plain language of OCGA § 48-4-42, a tax deed purchaser, not the defendant in fi. fa., is obligated to pay ad valorem taxes that accrue on the

subject property after the tax sale and before redemption, and excess funds owed to the defendant in fi. fa. cannot be used to satisfy that tax obligation of the purchaser.

A contrary holding would allow a tax deed purchaser to reap the benefits of the public investments in the community resulting from property taxation and any increases in the value of the property purchased at the sale that were caused by those investments, "without having to pay a proportional share of the cost of those benefits for an indefinite period of time." *Croft*, 276 Ga. App. at 314 (1). It also would have the inequitable result of continuing to obligate a defendant in fi. fa. to pay ad valorem taxes on property even after suffering the loss occasioned by having the property sold by the Tax Commissioner for failure to pay ad valorem taxes. Consequently, equity and public policy buttress our conclusion that the trial court erred in granting summary judgment to the Tax Commissioner and denying it to the Appellant on the issue of disbursement of the excess funds.[5] The trial therefore, must be reversed.

*Judgment reversed. Miller and Ray, JJ., concur.*

---

[5] We note that the Tax Commissioner has an authorized statutory remedy to satisfy the 2008-2010 taxes at issue in this case. Specifically, the Tax Commissioner can levy those subsequent tax liens against the tax deed purchaser and again sell the Property to satisfy the unpaid taxes pursuant to OCGA § 48-4-1 et seq.