**FOURTH DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J. and COOMER, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 29, 2019**

# In the Court of Appeals of Georgia

A19A1297. B.C. GRAND, LLC v. FIG, LLC et al.          DO-045

A19A1467. FIG, LLC v. B.C. GRAND, LLC.          DO-051

A19A1509. INVESTA SERVICES OF GA, LLC v. B.C. GRAND,   DO-053
   LLC.

   DOYLE, Presiding Judge.

   B.C. Grand, LLC, filed a class-action complaint[1] against Investa Services of

Georgia, LLC ("Investa"); Fortress Investment Group, LLC ("FIG"); and FIG Asset

Management, LLC[2] (collectively "the Defendants"), asserting that the Defendants

---

[1] See OCGA § 9-11-23 (governing class action lawsuits). The trial court did not reach the issue of class certification, and B.C. Grand does not argue that failure to certify was erroneous. Accordingly, we do not address class certification herein.

[2] B.C. Grand voluntarily dismissed its claims against FIG Asset Management prior to the trial court's entry of judgment in this case.

purchased tax executions for delinquent ad valorem taxes[3] on property to collect higher interest amounts and penalties than were due because the executions were based on initial tax assessments that were later reduced. B.C. Grand alleged that the Defendants wrongly collected and then failed to repay those sums; asserted claims of negligence, unjust enrichment, conversion, and conspiracy; and requested punitive damages and attorney fees. After finding that the complaint failed to state claims for conversion, negligence, or unjust enrichment, the trial court dismissed the complaint.[4]

In Case No. A19A1297, B.C. Grand appeals, arguing in a number of enumerations that the trial court erred by dismissing its complaint. In Case No. A19A1467, FIG cross-appeals, arguing that the trial court's dismissal could be upheld on the bases that (1) it was an improper party, (2) various statutes of limitation had expired, and (3) the voluntary payment doctrine precluded the claims. In Case No. A19A1509, Investa also cross-appeals, reiterating many of FIG's arguments and

---

[3] See OCGA § 48-3-19 (a) (3) ("'Execution' means an execution issued for the collection of any ad valorem taxes, special assessments, fees, penalties, interest, or collection costs due the state or any political subdivision thereof.").

[4] The trial court found unmeritorious the Defendants' arguments (1) that FIG was not a proper party; (2) that the applicable statutes of limitation had expired prior to filing; (3) that liability was capped at $150; (4) that the voluntary payment doctrine precluded the suit; and (5) that equitable estoppel barred the suit.

2

adding that the trial court also should have dismissed the complaint based on equitable estoppel. For the reasons that follow, we affirm the dismissal.[5]

"[A] trial court's ruling on a motion to dismiss for failure to state a claim is subject to de novo review, [and] we accept the allegations of fact that appear in the complaint and view those allegations in the light most favorable to the plaintiff."[6]

Viewed in this light, the record shows that in January 2012, B.C. Grand purchased from Trinity Properties Grant LTDLP property located on Broad Street in Atlanta, Georgia. In September 2012, after Trinity challenged the initial property value assessment, the Fulton County Tax Commissioner ("the Commissioner") issued a temporary tax bill to Trinity/B.C. Grand for a total of $128,110.46 based on a fair market value of $7.4 million. The bill stated that "[a]fter [February 23, 2018,] additional interest of [one percent] per month may continue to accrue until fully paid. Taxes are due as billed and must be paid by the due date regardless of appeal status." In its complaint, B.C. does not assert that either it or Trinity paid the 2012 taxes at the

---

[5] We have consolidated the appeals for purposes of this opinion.

[6] (Punctuation and citations omitted.) *Depository Trust &c. v. Jones*, 348 Ga. App. 474, 475 (823 SE2d 558) (2019), quoting *Bush v. Bank of N. Y. Mellon*, 313 Ga. App. 84, 89 (720 SE2d 370) (2011), *Infinite Energy v. Pardue*, 310 Ga. App. 355, 356 (1) (713 SE2d 456) (2011).

3

time of initial assessment, and in December 2012, the Commissioner issued tax executions[7] on the property — one for city taxes due and one for county taxes due.

Investa purchased the tax executions, paying the full face value (the equivalent of the underlying tax due plus some fees) in December 2012.[8] In January 2013, Trinity challenged the assessment with the Board of Equalization ("the Board"), which affirmed the assessment. In February 2013, Investa sent Trinity a required 60-day post-transfer notice,[9] which included interest and fees that had accrued during that time. Later that month, Trinity appealed the Board's determination to Fulton Superior Court[10]; and in September 2013, the Commissioner and Trinity entered into a consent agreement reducing the assessed value of the property for 2012 from $7.4 million to $3.8 million. Based on the consent agreement, the Commissioner issued a refund on the tax overpayment ($39,681.04 and $11,029.24), which was paid to B.C.

---

[7] "The terms tax execution and tax fieri facias or tax fi. fa. have over the years been used interchangeably and refer to one and the same type of writ." *Alexander Investment Group v. Jarvis*, 263 Ga. 489, n.1 (435 SE2d 609) (1993).

[8] Investa contends that it purchased the executions as the nominee of Fulton Tax Capital IV, LLC, while B.C. Grand alleged in its complaint that Investa purchased the executions as the nominee of FIG.

[9] See OCGA § 48-3-19 (c) (1) (2012).

[10] See OCGA § 48-5-311 (g) (2012).

4

Grand (the property owner at that point) based on the language of the pertinent refund statute at that time.[11] B.C. Grand does not allege in its complaint that it paid any portion of the 2012 taxes at this time. In November 2013, Investa sent B.C. Grand an annual notice[12] stating that the 2012 tax executions were due.

Eventually, in October 2014, Investa requested that the Fulton County Sheriff levy on the 2012 tax executions, and the sale was scheduled for December 2014. In November 2014, B.C. Grand filed a complaint, arguing that the 2012 tax executions were invalid because they were issued during appeal proceedings and based on the later-reduced assessment, and it requested a temporary restraining order ("TRO") until the validity of the executions was determined by the court. At the hearing on the TRO, the trial court denied the motion for a TRO, finding that B.C. Grand failed to cite authority to support its contention that the executions were void based on the change in the underlying assessment, and B.C. Grand paid the 2012 tax executions

_____

[11] See OCGA § 48-5-311 (e) (6) (D) (iii) (II) (2012) ("If the final determination of the value on appeal is less than the valuation thus used, the taxpayer shall receive a deduction in such taxpayer's taxes for the year in question. Such deduction shall be refunded to the taxpayer."). This Code section was amended in 2013 to state that "any final value that causes a reduction in taxes and creates a refund that is owed to the taxpayer shall be paid by the tax commissioner to the taxpayer, entity, or transferee who paid the taxes." See Ga. L. 2013, p. 655, § 5.

[12] See OCGA § 48-3-19 (f) (2012).

in order to prevent the sale; apparently, B.C. Grand later dismissed that case without proceeding further.

In June 2018, B.C. Grand filed the instant class action complaint seeking a refund of any interest and penalties it argues it overpaid to Investa and FIG as a result of the tax assessment reduction. The Defendants filed motions to dismiss or for judgment on the pleadings, attaching various documents thereto. Thereafter, the trial court granted the motions, and these appeals followed.

*Case No. A19A1297*

1. Under OCGA § 48-3-3 (b), "[t]he . . . tax commissioner shall issue executions for nonpayment of taxes . . . at any time after 30 days have elapsed since giving notice as provided in subsection (c) of this Code section." The Commissioner so issued the 2012 tax executions here. Nevertheless, B.C. Grand argues that because it successfully entered into a consent agreement with the Commissioner to lower the value of the property prior to levy on the 2012 executions, the Defendants improperly demanded interest and fees based on the higher amount and must return that overpayment.

Under OCGA § 48-3-19 (b) (1) (2012),

6

[w]henever any person other than the person against whom an execution has been issued pays an execution issued for state, county, or municipal taxes or special assessments, the officer whose duty is to enforce the execution may transfer the execution to the party so paying the full value of the execution. No officer whose duty it is to enforce an execution issued for state, county, or municipal taxes or special assessments shall be required to make any transfer or transfers of such execution or executions. *The transferee shall have the same rights as to enforcing the execution and priority of payment as might have been exercised or claimed by the tax official.* The person to whom the execution is transferred shall, within 30 days of the transfer, cause the execution to be entered on the general execution docket of the superior court of the county in which the execution was issued. In default of the required entry or entries, the execution shall lose its lien upon any property which has been transferred in good faith and for a valuable consideration before the entry and without notice of the existence of the execution.[13]

B.C. Grand contends that this language prohibited the Defendants from demanding payment of the amount of interest it charged because the Commissioner eventually lowered the assessment and issued a refund on the amount of taxes paid.[14]

The trial court disagreed and dismissed the case based on B.C. Grand's failure to state a claim for negligence, conversion, or unjust enrichment based on the law of

---

[13] (Emphasis supplied.)

[14] See OCGA § 48-5-311 (e) (6) (D) (iii) (II) (2012).

7

those substantive claims. Pretermitting whether B.C. Grand's complaint stated facts to support claims under those causes of action,[15] it has failed to allege that the Commissioner cancelled the tax executions or that they are void as a matter of law based on the post-issuance reduction in the tax assessment. This prohibits their substantive claims as a matter of law. B.C. Grand attempts to rely on statutes from Title 9, which discusses judgment liens, to argue that the Commissioner violated the law by issuing the executions during the tax appeal, but tax executions are governed instead by Title 48.[16] While nothing in Title 48 requires the Commissioner to issue

---

[15] See *Decatur Auto Center v. Wachovia Bank, N.A.*, 276 Ga. 817, 821 (583 SE2d 6) (2003) (conversion); *Campbell v. Ailion*, 338 Ga. App. 382, 387-388 (2) (790 SE2d 68) (2016) (unjust enrichment); *Trey Inman & Assocs., P.C. v. Bank of America, N.A.*, 306 Ga. App. 451, 458 (4) (702 SE2d 711) (2010) (conversion); *Regional Pacesetters, Inc., v. Halpern Enterprises, Inc.*, 165 Ga. App. 777, 782-783 (2) (300 SE2d 180) (1983) (unjust enrichment). See also OCGA § 48-5-380 (2014) (refund of taxes). Additionally, in *Ga. Dept. of Revenue v. Moore*, 294 Ga. 20, 22 (751 SE2d 57) (2013), the Supreme Court explained that "[t]he voluntary payment doctrine set forth in OCGA § 13-1-13 is a concept applicable to contracts, not tax indebtedness."

[16] See OCGA §§ 9-13-1, 9-13-2. Compare with OCGA §§ 48-3-3, 48-3-19. See also *Bellsouth Telecommunications, LLC v. Cobb County*, 305 Ga. 144, 151 (1) (824 SE2d 233) (2019) (explaining that if "two statutes are in conflict, the later-enacted statute prevails over the one enacted earlier, and the more specific statute governs over the more general one").

executions immediately after 30-days post tax delinquency,[17] because B.C. Grand failed to pay the taxes at issue while pursuing its appeal of the assessment and awaiting a refund as contemplated by the Code,[18] the tax executions were validly issued by the Commissioner.[19] And because B.C. Grand has failed to plead that the executions are void as a matter of law under Title 48 or were cancelled by the Commissioner in the consent judgment, the Defendants were authorized to levy the

---

[17] The Commissioner could have issued the executions *at any time* after 30 days had elapsed after notification to the taxpayer that they were delinquent. See OCGA § 48-3-3 (b) (2012). Moreover, the Commissioner was not required to transfer the execution to the person who paid for it. See OCGA § 48-3-19 (b) (1) (2012) ("Whenever any person other than the person against whom an execution has been issued pays an execution issued for state, county, or municipal taxes or special assessments, the officer whose duty is to enforce the execution *may* transfer the execution to the party so paying the full value of the execution. *No officer* whose duty it is to enforce an execution issued for state, county, or municipal taxes or special assessments *shall be required to make any transfer or transfers of such execution or executions*.") (emphasis supplied).

[18] See OCGA §§ 48-5-311 (e) (6) (D) (iii) (II), 48-5-380 (2012).

[19] See OCGA § 48-3-3 (b) (2012).

executions and demand payment as prescribed by Title 48.[20] Accordingly, we affirm

the trial court's dismissal of the action.[21]

*Case Nos. A19A1467 & A19A1509*

2. Based on the holding of Division 1, we need not address the cross-appeals.

*Judgment affirmed. McFadden, C. J. and Coomer, J., concur.*

---

[20] See OCGA § 48-3-19 (d) (2012) ("An execution which has been transferred shall bear interest as specified in Code Section 48-3-20 on the amount paid for such execution from the date of the transfer. In addition, the transferee may charge and collect recording fees actually expended in recording the transferred execution on the general execution docket of any county in which the transfer is recorded and such other penalties as are provided for in this title."). OCGA § 48-3-20 (2012) states that "[a]ll tax executions, when recorded as prescribed by law and which have been transferred to third persons, shall bear interest at the rate specified in Code Section 48-2-40 from the date of transfer." And OCGA § 48-2-40 (2012) states that "[e]xcept as otherwise expressly provided by law, taxes owed the state or any local taxing jurisdiction shall bear interest at the rate of 1 percent per month from the date the tax is due until the date the tax is paid. For the purposes of this Code section, any period of less than one month shall be considered to be one month. . . .").

[21] We may affirm the judgment below if it is right for any reason. See *Nat. Tax Funding v. Harpagon Co.*, 277 Ga. 41, 45 (4) (586 SE2d 235) (2003).